Present:  All the Justices

ROBERT STACY YARBROUGH

v.  Record No. 010161   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        September 14, 2001
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Charles L. McCormick, III, Judge


In this appeal, we review the death sentence imposed on
Robert Stacy Yarbrough after penalty phase proceedings conducted
upon remand of this case to the trial court.

I.  PROCEEDINGS

The defendant was convicted in a jury trial of capital
murder for the willful, deliberate, and premeditated killing of
Cyril Hugh Hamby during the commission of robbery, in violation
of Code § 18.2-31(4).  The trial court sentenced the defendant
to death in accordance with the jury verdict.  A full statement
of facts surrounding the crime is set forth in Yarbrough v.
Commonwealth, 258 Va. 347, 353-55, 519 S.E.2d 602, 603-05
(1999).  In that appeal, we affirmed the defendant's conviction
but remanded the case for a new penalty determination because
the trial court denied the defendant's request for a jury
instruction that he would be ineligible for parole if sentenced
to life imprisonment.  Id. at 366-74, 519 S.E.2d at 611-17.

In the penalty phase proceeding on remand, a different jury
fixed the defendant's punishment for capital murder at death

based on a finding of "vileness." Code § 19.2-264.2. The trial court sentenced the defendant in accordance with that verdict. In this appeal, we review the defendant's death sentence pursuant to Code § 17.1-313(C) and consider his assignments of error related to various rulings made by the trial court during the second penalty phase proceeding.

## II.  PENALTY PHASE EVIDENCE

During the second penalty phase proceeding, the Commonwealth presented essentially the same evidence it had presented during the first penalty phase proceeding, including evidence that the defendant killed Hamby by stabbing him multiple times in the neck. The Commonwealth's evidence also included testimony from Hamby's family and friends concerning the impact of Hamby's murder on them. Hamby's two daughters, his daughter-in-law, and one of his granddaughters testified that their relationships with Hamby were close and were nurtured by his kindness and thoughtfulness, and that Hamby's death has devastated their family. Two former neighbors and long-time customers of Hamby testified that Hamby had developed close friendships with them that demonstrated his warmth and generosity.

The Commonwealth also presented testimony from Dr. Marcella F. Fierro, the Chief Medical Examiner for the Commonwealth. Dr. Fierro testified that Hamby bled to death as a result of at

2

least ten separate knife wounds to his neck.  She testified that the wounds penetrated to the junction between the neck and skull at several locations on the rear of Hamby's neck, and that such wounds "are usually associated with trying to take the head off."  In addition, Dr. Fierro identified injuries from at least five separate blows to Hamby's head that were consistent with beating and kicking.  She testified that Hamby was alive when all these wounds were inflicted, and that it took as long as 15 minutes for him to bleed to death.  The Commonwealth presented additional testimony from Dominic Rainey, a witness to the killing, who testified that Hamby was begging the defendant to stop attacking him while the defendant was cutting the front and rear of Hamby's neck in a "sawing motion."

Yarbrough presented testimony from his mother who stated that Yarbrough had lived with her his entire life except for two years as a teenager during which he lived with his grandmother. Yarbrough also presented testimony from his former prison counselor who testified that Yarbrough had not received any adverse disciplinary reports during his time in prison.

### III.  JURY SELECTION ISSUE

During jury selection, the prosecutor used three peremptory strikes to remove African Americans from the 24-member venire. The defendant asserted a challenge to the jury panel under Batson v. Kentucky, 476 U.S. 79 (1986), alleging that these

members of the venire were excluded from the jury panel because of their race.  After the prosecutor explained his reasons for striking these three individuals, the trial court overruled the defendant's Batson challenge.

The prosecutor gave the following explanation of his action striking potential juror Melvin L. Woodson, Sr., from the panel:

> [W]hen he first walked in the room his eyes were on the defendant. . . . He subsequently, gave us a great deal of concern.  We had a problem hearing the last comment he made to [defense counsel].  The air conditioning was on.  We didn't hear what was said. . . .  We [were] concerned about his sympathies lying with the defendant or [defense counsel], based upon the comment that he made to [defense counsel], and based upon his actions in court. . . .  If we knew what comment he made, I might be able to answer the question to the Court in more detail. . . .

The prosecutor also stated that Woodson's last "comment" concerned him because "[i]t was about race."  The comment in question took place during the following exchange:

> [DEFENSE COUNSEL]: [The defendant], obviously is black.  [The victim] is white.  I know you realize that.  Do either of you think that would influence you in any way?  Do you think you might reach a different decision if they were both white?
>
> MR. WOODSON: I deal with both races every day.
>
> [DEFENSE COUNSEL]: I know you do.

At defense counsel's request, the court reporter related the substance of Woodson's comment, and the prosecutor responded,

> We didn't hear that.  We believe[d] based upon [defense counsel's] reaction to his comment that something else was said.  That is why we did it, because we didn't know. . . . We didn't have that information at the time we made the

4

strikes, and we didn't know what was said.  We were back there blind.  That is essentially why we made the strike.  We didn't know, but it raised a concern, because it was about race that it concerned me what it was. [sic] That is the basis for the strike.  One of the primary reasons.

The prosecutor further stated:

[O]ur concern [also] was as to his reaction to the defendant.  He is a teacher who teaches children that are just a couple of years younger than [the defendant], and we did not know what that comment was at that time. . . . [I]n view of . . . [Mr. Woodson's] relationship with people that age, and the reaction that I noted when he first came in.  I made note of him in my notes that we would be concerned, and we would have a very difficult time to convince him to impose the death penalty on someone 19 years old.

On appeal, the defendant concedes that the prosecutor had valid race-neutral reasons for using peremptory strikes to remove two other African Americans from the jury panel, but contends that the prosecutor struck Melvin Woodson "on racial grounds."  The defendant argues that the prosecutor failed to present a valid race-neutral reason for making this peremptory strike because he stated to the court that he believed Woodson had made a "racial" comment.

In response, the Commonwealth contends that the facts do not raise an inference that the prosecutor struck Woodson from the jury panel because of his race.  The Commonwealth notes the prosecutor's explanation that Woodson exhibited an unusual interest in the defendant and that as a teacher, Woodson may have been sympathetic to a 19-year-old defendant.  The Commonwealth contends that such concerns about a potential

5

juror's demeanor and interest in a defendant provide a race-neutral explanation for exercising a peremptory strike. The Commonwealth also asserts that the prosecutor's inability to hear Woodson's complete response concerning race provides a separate race-neutral explanation for striking Woodson from the panel.

In considering this argument, we review the principles that govern the determination of a <u>Batson</u> challenge. In <u>Batson</u>, the Supreme Court stated the requirements for establishing a prima facie case of purposeful discrimination in the selection of a petit jury. 476 U.S. at 96. The Court held that to establish a prima facie case,

> the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

<u>Id.</u>

The defendant has the burden of producing a record that supports a prima facie case of purposeful discrimination. <u>United States v. Escobar-de Jesus</u>, 187 F.3d 148, 164 (1st Cir. 1999), <u>cert. denied</u>, 528 U.S. 1176 (2000); <u>Johnson v.</u>

6

Commonwealth, 259 Va. 654, 674, 529 S.E.2d 769, 780, cert. denied, ___ U.S. ___, 121 S.Ct. 432 (2000); Atkins v. Commonwealth, 257 Va. 160, 175, 510 S.E.2d 445, 454 (1999); see Batson, 476 U.S. at 96-97. The fact that the prosecution has excluded African Americans by using peremptory strikes does not itself establish such a prima facie case under Batson. Johnson, 259 Va. at 674, 529 S.E.2d at 780; see Batson, 476 U.S. at 96-97.

A defendant also must identify facts and circumstances that raise an inference that potential jurors were excluded based on their race. Batson, 476 U.S. at 96; Escobar-de Jesus, 187 F.3d at 164; Johnson, 259 Va. at 674, 529 S.E.2d at 781. If a defendant makes a prima facie showing that the prosecutor has made a peremptory strike on the basis of race, the burden shifts to the prosecution to articulate race-neutral reasons for that strike. Batson, 476 U.S. at 97; Atkins, 257 Va. at 175, 510 S.E.2d at 454; Chichester v. Commonwealth, 248 Va. 311, 323, 448 S.E.2d 638, 646 (1994), cert. denied, 513 U.S. 1166 (1995).

A trial court's determination whether the reason given for exercising a peremptory strike is race-neutral is entitled to great deference. Atkins, 257 Va. at 175, 510 S.E.2d at 454; Spencer v. Commonwealth, 238 Va. 295, 310, 384 S.E.2d 785, 795 (1989), cert. denied, 493 U.S. 1093 (1990). This determination will not be reversed on appeal unless it is "clearly erroneous."

7

Hernandez v. New York, 500 U.S. 352, 369 (1991); Atkins, 257 Va. at 175, 510 S.E.2d at 454.

Assuming, without deciding, that the defendant established a prima facie case of purposeful discrimination under Batson, we hold that the record supports the trial court's conclusion that Woodson was not struck from the jury panel because of his race. The trial court accepted the prosecutor's two-fold explanation concerning Woodson's profession as a teacher and the prosecutor's inability to hear Woodson's complete response to the question concerning racial bias. The trial court's determination that these explanations were race-neutral necessarily was based on the court's evaluation of the prosecutor's credibility. We find nothing in the record to support a conclusion that the court's determination was clearly erroneous, and we observe that the trial judge himself indicated that he was unable to hear Woodson's response on the subject of race. Thus, we will not disturb the trial court's finding that the prosecutor's explanations for striking Woodson were race-neutral.

## IV. MISTRIAL MOTION

The defendant assigns error to the trial court's refusal to grant his motion for a mistrial, which was based on allegedly improper remarks made by the prosecutor in his rebuttal to defense counsel's closing argument. Defense counsel had argued

that if the defendant were sentenced to life imprisonment, he would remain in prison for life with "[n]o chance of ever seeing the outside world," and that he would "never leave, ever."  In rebuttal, the prosecutor stated:

> [W]e used to have parole eligibility, and then a few years ago the legislature decided to abolish that. . . . What [defense counsel] is asking you to do is take a pair of dice and roll them and hope that the law doesn't change again.

Defense counsel objected to this remark, stating that it was "highly improper," and that the prosecutor knew that "even if the law changes, it doesn't change this."  The trial court responded, "I think the comment is improper, and I would ask that the jury disregard that."

The prosecutor continued his closing argument, stating that "I don't know what is worse[,] the fear that he gets out[,] or the fear of what he is going to do with nothing to lose for the rest of his life."  Defense counsel objected to this remark but did not request a mistrial during the penalty phase trial based on this or any other of the prosecutor's arguments.

Nearly six months after the penalty phase trial, but prior to sentencing, the defendant filed a motion for a mistrial asserting that the prosecutor's remarks about potential changes in the law of parole eligibility were so inflammatory that the trial court's cautionary instruction was insufficient.  The defendant contended that the prosecutor's remarks generally

misstated the law and also were improper because the defendant's future dangerousness was not at issue. At the sentencing hearing, the trial court denied the mistrial motion, stating that the "prompt cautionary instruction that the [c]ourt gave the jury . . . was sufficient to take care of any problems that were raised by those remarks. And I'm not going to assume that the jury or any juror did not follow the instructions that the [c]ourt had given them."

On appeal, the defendant argues that the trial court erred in denying his mistrial motion because the prosecutor's remarks were improper and were an incorrect statement of the law. The defendant also contends that the court's cautionary instruction was inadequate because the court did not instruct the jury to disregard the remarks at issue but merely asked the jury to do so. The defendant asserts that the trial court's actions denied him a fair trial and due process of law. We do not reach the merits of these arguments.

A motion for a mistrial based on allegedly improper argument of counsel is untimely unless the motion is stated when the remarks at issue were made. Yeatts v. Commonwealth, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991), cert. denied, 503 U.S. 946 (1992). Here, the defendant's mistrial motion, including his objection to the form and the content of the trial court's curative instruction, was made several months after the jury

10

delivered its verdict.  Since this mistrial motion was untimely, we will not consider its substance on appeal.  See Schmitt v. Commonwealth, 262 Va. 127, 148, 157 S.E.2d 186, 200 (2001); Sheppard v. Commonwealth, 250 Va. 379, 394-95, 464 S.E.2d 131, 140-41 (1995), cert. denied, 517 U.S. 1110 (1996); Breard v. Commonwealth, 248 Va. 68, 82, 445 S.E.2d 670, 679, cert. denied, 513 U.S. 971 (1994); Yeatts, 242 Va. at 137, 410 S.E.2d at 264; Cheng v. Commonwealth, 240 Va. 26, 38-39, 393 S.E.2d 599, 605-06 (1990).

## V.  SENTENCE REVIEW

### Passion and Prejudice

Under Code § 17.1-313(C), we review the defendant's death sentence to determine whether it (1) was imposed under the influence of passion, prejudice, or any other arbitrary factor; or (2) is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The defendant argues that the death sentence was based on passion, prejudice, and arbitrariness, and that the trial court erred in "refusing" to vacate the sentence, because "[t]he probability of prejudice and emotion taking their toll on the jury was great, most especially in light of the prosecutor's highly improper argument concerning the possibility of [the defendant] one day being paroled."  The defendant asserts that since the trial court did not grant his motion for a mistrial,

11

"the only way to be certain that the death penalty was not imposed as the result of passion and fear was to vacate that sentence and impose a sentence of life imprisonment." We find no merit in these arguments.

The trial court gave a prompt, explicit curative instruction when the defendant objected to the prosecutor's argument. Unless the record clearly shows that a jury has disregarded such a curative instruction, we will presume that the jury followed it. Schmitt, 262 Va. at 147-48, 547 S.E.2d at 200; Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420, cert. denied, 510 U.S. 859 (1993); Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619, cert. denied, 498 U.S. 908 (1990). Here, the record does not show that the jury disregarded the court's instruction or that its verdict was based on any consideration other than the evidence presented. Thus, we conclude that record fails to support the defendant's argument that the prosecutor's remarks caused the jury to act with passion, prejudice, or in an arbitrary manner. We also hold that the record, considered in its entirety, fails to show that the jury rendered its verdict based on passion, prejudice, or any other arbitrary factor.

### Excessiveness and Proportionality

The defendant argues that the trial court erred in "refusing" to vacate the jury's death sentence because it was

disproportionate to the penalty imposed in similar cases.  The defendant also contends that his case "pale[s] by comparison with virtually every case in which the Court has found the evidence sufficient to support the vileness predicate."  We disagree.

First, the death penalty statutes do not require the trial court to conduct a proportionality review.  Lovitt, 260 Va. 497, 518, 537 S.E.2d 866, 880 (2000).  Instead, Code § 19.2-264.5 directs that "[a]fter consideration of the [post-sentence] report, and upon good cause shown, the [trial] court may set aside the sentence of death and impose a sentence of imprisonment for life."  This provision permits the capital murder defendant the same opportunity as any other criminal defendant, under a precise and unambiguous standard, to ask the trial court to change the jury's sentence.  Id.; Bassett v. Commonwealth, 222 Va. 844, 860, 284 S.E.2d 844, 854 (1981), cert. denied, 456 U.S. 938 (1982).  Here, after hearing argument from the defendant's counsel, the trial court declined to exercise its discretionary authority under the statute to impose a sentence of life imprisonment.  Based on the record before us, we conclude that the trial court did not abuse its discretion in declining to change the sentence set by the jury.

In conducting this Court's proportionality review, we must determine whether other sentencing bodies in this jurisdiction

generally impose the death penalty for comparable or similar crimes, considering both the crime and the defendant. Schmitt, 262 Va. at 154, 547 S.E.2d at 203; Lovitt, 260 Va. at 518, 537 S.E.2d at 880; Johnson, 259 Va. at 683, 529 S.E.2d at 786; Jenkins v. Commonwealth, 244 Va. 445, 461, 423 S.E.2d 360, 371 (1992), cert. denied, 507 U.S. 1036 (1993). We have compared the record in the present case with the records of other capital murder cases, including those in which a sentence of life imprisonment was imposed. We also have examined the records of all capital cases reviewed by this Court pursuant to Code § 17.1-313(E).

Under Code § 19.2-264.2, the jury's finding of "vileness" was based on a conclusion that the defendant's "conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim." Since the jury imposed the death sentence based on this predicate, we give particular consideration to other capital murder cases in which the death penalty was obtained under the same predicate.

Considering both the crime and the defendant, we conclude that the death sentence in this case is not excessive or disproportionate to penalties imposed by other sentencing bodies in the Commonwealth for comparable or similar crimes. As stated

14

above, after robbing Cyril Hamby, the defendant repeatedly cut the front and rear of Hamby's neck in a "sawing motion" with a pocket knife, while Hamby was conscious and begging the defendant to stop attacking him.  Hamby sustained a minimum of ten separate knife wounds to the neck, which were of a type usually associated with an attempted decapitation.

The vileness of this offense, as shown by the aggravated battery the defendant inflicted on Hamby and the depravity of mind required for the execution of this particular crime, is comparable to the vileness we have considered in other cases. We also observe that juries in this Commonwealth, with some exceptions, generally have imposed the death sentence for convictions of capital murder based on a finding of "vileness" in which the underlying predicate crime was robbery.  See, e.g., Overton v. Commonwealth, 260 Va. 599, 539 S.E.2d 421 (2000), cert. denied, ___ U.S. ___, 121 S.Ct. 1651 (2001); Fry v. Commonwealth, 250 Va. 413, 463 S.E.2d 433 (1995), cert. denied, 517 U.S. 1110 (1996); Bennett v. Commonwealth, 236 Va. 448, 374 S.E.2d 303 (1988), cert. denied, 490 U.S. 1028 (1989); Turner v. Commonwealth, 234 Va. 543, 364 S.E.2d 483, cert. denied, 486 U.S. 1017 (1988); Correll v. Commonwealth, 232 Va. 454, 352 S.E.2d 352, cert. denied, 482 U.S. 931 (1987); Wise v. Commonwealth, 230 Va. 322, 337 S.E.2d 715 (1985), cert. denied, 475 U.S. 1112 (1986); Boggs v. Commonwealth, 229 Va. 501, 331

15

S.E.2d 407 (1985), cert. denied, 475 U.S. 1031 (1986); Jones v. Commonwealth, 228 Va. 427, 323 S.E.2d 554 (1984), cert. denied, 472 U.S. 1012 (1985); LeVasseur v. Commonwealth, 225 Va. 564, 304 S.E.2d 644 (1983), cert. denied, 464 U.S. 1063 (1984); Bunch v. Commonwealth, 225 Va. 423, 304 S.E.2d 271, cert. denied, 464 U.S. 977 (1983); Whitley v. Commonwealth, 223 Va. 66, 286 S.E.2d 162, cert. denied, 459 U.S. 882 (1982).

## VI.  CONCLUSION

We find no reversible error in the judgment of the trial court.  Having reviewed the defendant's death sentence pursuant to Code § 17.1-313, we decline to commute the sentence. Accordingly, we will affirm the trial court's judgment.

Affirmed.