**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 27th day of October, 2006.

Walter Lee Dupree, Jr.,                                    Appellant,

  against              Record No. 060216
                      Court of Appeals No. 2682-04-1

Commonwealth of Virginia,                                  Appellee.

Upon an appeal from a judgment rendered by the Court of Appeals of Virginia.

Upon consideration of the record, the briefs, and the argument of counsel, the Court is of opinion that there is reversible error in the judgment of the Court of Appeals.

The Commonwealth concedes that the circuit court erred in refusing to allow Dupree to question his own witness, Patrice Greene, about a prior inconsistent statement. This concession reflects the well-established principle of law that a party may impeach a witness who unexpectedly proves adverse. See Code § 8.01-403; Roberts v. Commonwealth, 230 Va. 264, 269-70, 337 S.E.2d 255, 258-59 (1985); Stoots v. Commonwealth, 192 Va. 857, 866, 66 S.E.2d 866, 871 (1951); Maxey v. Commonwealth, 26 Va. App. 514, 518-19, 495 S.E.2d 536, 538-39 (1998).

The circuit court's refusal to allow Dupree to impeach Greene was not harmless error. "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave

doubt, the conviction cannot stand." Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001).

The only issue at trial was whether Dupree fired a gun, wounding three victims. Before trial, none of the witnesses to the crimes was able to identify Dupree in a photographic "line-up." However, at trial, three witnesses identified Dupree as the person who fired the gun. As a result, issues regarding the accuracy and the credibility of the witnesses' testimony focused on their recollections concerning the clothing of the person they observed firing the gun, Dupree's clothing, and where Dupree was seated in the vehicle. The witnesses produced by the Commonwealth had made inconsistent statements on these subjects.

Dupree produced Greene as his only witness, expecting her to testify consistently with her previous statement to the police that the shooter was wearing a gray coat at the time of the shootings. Instead, Greene testified that the shooter was wearing a "black hoodie." The circuit court refused to allow Dupree to impeach Greene with her prior inconsistent statement.

The question whether the shooter was wearing a "black hoodie" or a gray coat was rendered a crucial issue of fact in the case as a result of the witnesses' inconsistent recollections on that subject. Greene's prior inconsistent statement that the shooter was wearing a gray coat when the shootings occurred would have served to impeach her trial testimony. Additionally, the fact that she gave conflicting testimony would have tended to discredit further the

2

testimony of other witnesses who also made similar inconsistent statements.  Because the jury may have been swayed by Greene's impeachment testimony, "it is impossible to conclude that substantial rights were not affected" by exclusion of this impeachment testimony.  Id.  Therefore, the circuit court's erroneous exclusion of Greene's impeachment testimony was not harmless error.

Accordingly, the judgment appealed from is reversed and the case is remanded to the Court of Appeals for further remand to the circuit court for a new trial if the Commonwealth be so advised.

This order shall be published in the Virginia Reports and shall be certified to the Court of Appeals of Virginia and the Circuit Court of the City of Virginia Beach.

JUSTICE LACY, with whom JUSTICE KINSER and JUSTICE AGEE join, dissenting.

I respectfully dissent from the majority's conclusion that the trial court's refusal to allow impeachment evidence was reversible error.

Walter Lee Dupree was convicted by a jury in the Circuit Court of the City of Virginia Beach of three counts each of malicious wounding and use of a firearm in commission of a felony.  Dupree appealed his conviction to the Court of Appeals, arguing that the trial court erred in ruling that he could not impeach his witness with a prior inconsistent statement and in ruling that the Commonwealth's strike of an African-American woman from the venire was not racially motivated in violation of Batson v. Kentucky, 476

3

U.S. 79 (1986).  The Court of Appeals denied Dupree's petition on his assertion of a Batson violation, Dupree v. Commonwealth, Record No. 2682-04-1 (May 25, 2005), and in an unpublished opinion held that although the trial court erred in ruling that Dupree could not impeach his own witness with a prior inconsistent statement, such error was harmless.  Dupree v. Commonwealth, Record No. 2682-04-1, slip op. 6 (Dec. 28, 2005).  Dupree filed a petition for appeal in this Court, assigning error to the Court of Appeals' determination that the Commonwealth did not violate the principles of Batson in using its preemptory strikes and that the trial court's error in not allowing impeachment of his witness was harmless.  This Court granted Dupree an appeal on both issues.

In my opinion, the Court of Appeals correctly held that the trial court's decision not to allow Dupree to impeach his own witness was harmless error.  Additionally, I find this Court cannot say that the trial court was clearly erroneous in its holding that the reason the Commonwealth gave for striking the venireman was race neutral and not pretextual.  Accordingly, I would affirm the conviction.

Impeachment

The Commonwealth produced three witnesses at trial – Jamar Mayo, Andrea Logan and Vashawn Williams – who testified that they recognized Dupree as the shooter.  All three witnesses stated they based their identifications on facial recognition of Dupree.  The witnesses also testified that Dupree was wearing a black hooded sweatshirt (referred to by the witnesses as a "hoodie") during the

4

shooting.

The Commonwealth also called Detective Glenn R. Sostak, the lead investigator in the case, who testified that during his initial interviews with Mayo and Logan, they told him the shooter was wearing a gray coat. When confronted with these prior inconsistent statements at trial, Logan testified that she might have given this description, while Mayo testified that he did not remember giving this description.

Dupree called Patrice Greene as his only witness. Dupree anticipated Greene would testify consistently with statements she made shortly after the shooting to police, namely that the shooter was wearing a gray coat. At trial Greene instead testified that the shooter was wearing a black hoodie. Dupree attempted to impeach Greene with her prior inconsistent statement, however the Commonwealth objected and the trial court sustained the objection.

The majority opinion states Greene's "conflicting testimony would have tended to discredit further the testimony of other witnesses who also made similar inconsistent statements." However, the long established rule of this Court is that a witness' prior inconsistent statement may only be used to discredit that witness and is not admissible as substantive evidence in the case. Hall v. Commonwealth, 233 Va. 369, 375, 355 S.E.2d 591, 595 (1987). Thus, even if Greene's prior inconsistent statement had been admitted as impeachment evidence, and even if the statement had the effect of totally discrediting Greene's testimony, the statement would not have been admissible to contradict the prosecution's witnesses as suggested by the majority.

5

Furthermore, even if Green's impeachment could have been used to "discredit" other witnesses, they had already been discredited in this regard. The jury was told, prior to Greene's testifying, that the other witnesses had given inconsistent information regarding the shooter. Detective Sostak testified that witnesses Mayo and Logan initially told him that the shooter was wearing a gray jacket, although they testified at trial that Dupree was the shooter and he was wearing a black hoodie. Thus, Greene's impeachment testimony would have only been cumulative of the inconsistent testimony by other witnesses already before the jury.

In Rose v. Commonwealth, 270 Va. 3, 613 S.E.2d 454 (2005), we outlined the test for determining whether non-constitutional error was harmless. We stated:

> When deciding whether non-constitutional error is harmless in the context of a criminal proceeding, we must apply Code § 8.01-678 that states in pertinent part:
>
>> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.
>
> We stated in Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) that "in a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless."

270 Va. at 11-12, 613 S.E.2d at 458. Given the record before us, it

6

is apparent Dupree had a fair trial on the merits and substantial justice has been reached.

The trial court's error in preventing impeachment of Greene did not substantially influence the jury. As the Court of Appeals correctly noted, the jury heard the testimony of three of the Commonwealth's witnesses who all testified that they remembered seeing the shooter's face and that their in-court identifications were based on facial recognition, not the clothing worn by the shooter. "The jury considered the discrepancy in the testimony and resolved it by crediting the witnesses' testimony that they saw the shooter's face. An impeachment of Greene on the clothing issue, therefore, could not have substantially influenced the jury, because the jury resolved the only issue on which her testimony was relevant." Dupree, Record No. 2682-04-1, slip op. at 6. Accordingly, in my opinion, the trial court's failure to allow impeachment of Green had no impact on the jury's decision and, therefore, its improper omission was harmless error.

## Batson Challenge

At Dupree's trial, the Commonwealth's Attorney exercised three peremptory strikes. The first strike was Peter Mikulka, a white retired male psychology professor. Mikulka's wife was a retired high school counselor. The second strike was Keira Taylor-Banks, an African-American woman who worked as an assistant pastor and was married to a senior pastor in a Christian international organization. The Commonwealth's third strike was Ciara Freeman,

7

also an African-American woman, who was single, seven months pregnant, and worked as a recovery analyst for Bank of America. Following the exercise of these strikes, Dupree raised Batson challenges with respect to the Commonwealth's strikes of Taylor-Banks and Freeman, who were the only African-American members of the venire.

Dupree first objected to the strike of Taylor-Banks, stating there were no race-neutral reasons for the strike. The Commonwealth's Attorney responded that she struck Taylor-Banks on the basis of her employment as an assistant pastor and her husband's employment as a pastor. The Commonwealth's Attorney noted that the strike was for the same race-neutral reason that she struck the white psychology professor, Peter Mikulka. She stated she was "looking for people who can . . . sit in judgment of others and don't have any problem with that" and that she believed "somebody with very strong religious beliefs . . . and someone who makes a living [as an assistant pastor] would not be a good Commonwealth juror anymore than a therapist would or somebody who's a counselor or somebody in that sort of employment field."

The Court found the Commonwealth's explanation to be a "race-neutral rationale" and allowed the Commonwealth to exercise the strike.

Second, Dupree challenged the strike of Ciara Freeman. The Commonwealth's Attorney responded that her "race-neutral reason to

8

strike [Freeman] is that she's seven months' [sic] pregnant."  The Commonwealth's Attorney went on to say, "Having had two children, I know what it feels like to be seven months' [sic] pregnant and while she may say that she would interrupt the court if she needed to have a bathroom break, I don't believe that's likely to happen. . . .  I don't believe a juror is going to raise her hand and interrupt the court in an unfamiliar, intimidating setting such as this and say, Hey, I need to use the bathroom."

The trial court responded "I don't think that that is race neutral, and she . . . indicated that she was perfectly fine in sitting and was willing to sit and . . . she didn't even indicate that she would have a bathroom problem.  I was the one who suggested that . . . and she said that would be fine."  The court did not allow the Commonwealth to exercise the strike as to Freeman.

The principles applicable to challenges of racial motivation for the exercise of peremptory strikes on a jury panel initially were set out in Batson v. Kentucky, 476 U.S. 79 (1986), and subsequently have been refined in decisions of this Court.  Most recently, the test for a Batson violation was discussed in Juniper v. Commonwealth, 271 Va. 362, 626 S.E.2d 383 (2006), in which we stated:

> When a defendant makes a Batson challenge to the use of a peremptory strike, he must show that the individual "is a member of a cognizable racial group," Yarbrough v. Commonwealth, 262 Va. 388, 394, 551 S.E.2d 306, 309 (2001) cert. denied, 535 U.S. 1060 (2002) (quoting Batson, 476 U.S. at 96), and "make a prima facie showing that the peremptory strike was made on racial grounds." Jackson, 266 Va. at 436, 587 S.E.2d at 542. Mere

9

exclusion of members of a particular race by using peremptory strikes "does not itself establish such a prima facie case under Batson." Yarbrough, 262 Va. at 394, 551 S.E.2d at 309. To establish a prima facie case, the defendant must also "identify facts and circumstances that raise an inference that potential jurors were excluded based on their race." Id.

Once a prima facie case is put before the court, the burden shifts to the prosecution "to produce race-neutral explanations for striking the juror." The defendant can then argue that the prosecution's explanations were purely a pretext for unconstitutional discrimination. Jackson, 266 Va. at 436, 587 S.E.2d at 542.

Juniper, 271 Va. at 407, 626 S.E.2d at 412.

This Court explained the vital role of the trial court in the Batson challenge process in Jackson v. Commonwealth, 266 Va. 423, 587 S.E.2d 532 (2003), where we stated: "Whether the defendant has carried his burden of proving purposeful discrimination in the selection of the jury is . . . a matter to be decided by the trial court." Id. at 436, 587 S.E.2d at 542. We went on to say, "On appellate review, the trial court's conclusion regarding whether reasons given for the strikes are race-neutral is entitled to great deference, and that determination will not be reversed on appeal unless it is clearly erroneous. The trial court has the unique opportunity to observe the demeanor and credibility of potential jurors during voir dire." Id. (citations omitted).

In this case, the trial court held the Commonwealth's rationale for striking Taylor-Banks was race-neutral and not pretextual. The trial court directed the voir dire of potential

10

jurors and observed the Commonwealth's Attorney when she responded to Dupree's Batson challenge. As the first hand observer, the findings of the trial court are to be accorded great deference and, in accordance with this Court's holding in Jackson, should only be reversed if clearly erroneous.

This Court has held that concern over a venireman's occupation and religious beliefs are valid reasons for a peremptory strike. In James v. Commonwealth, 247 Va. 459, 442 S.E.2d 396 (1994), the Commonwealth struck an African-American member of the jury pool based on his profession as a nursing assistant and the two-inch long crucifix necklace he wore. The Commonwealth's proffered rationale, that a nursing assistant might be more sympathetic than persons in other professions and that the man's visible display of a religious symbol reinforced the perception of such sympathy, was upheld by this Court. Id. at 463, 442 S.E.2d at 398.

In this case, the Commonwealth's Attorney similarly struck Taylor-Banks on the basis of her profession. The Commonwealth's Attorney stated she was "looking for people who can . . . sit in judgment of others and don't have any problem with that" and that she believed "somebody with very strong religious beliefs . . . and someone who makes a living [as an assistant pastor] would not be a good Commonwealth juror anymore than a therapist would or somebody who's a counselor or somebody in that sort of employment field." Consistent with this rationale is the fact that the Commonwealth's Attorney previously struck Peter Mikulka, a white male psychology professor, who she argued had similar weaknesses as a juror for the

11

Commonwealth.  The trial court found this rationale to be persuasive, and it does not appear from the record that this Court can find the trial court's holding to be clearly erroneous.

Given the trial court's analysis in this case, the reasons proffered by the Commonwealth for the strike, and the precedent set forth in James, this Court cannot say the findings of the trial court were "clearly erroneous."  Thus, under Jackson, 266 Va. at 435-37, 587 S.E.2d at 542-43, I would affirm the ruling of the trial court.

A Copy,

Teste:


Patricia L. Harrington, Clerk

12