COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Petty and Senior Judge Bumgardner
Argued at Chesapeake, Virginia

UNPUBLISHED

CAMERON PAUL CROCKETT

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0119-13-1                JUDGE RUDOLPH BUMGARDNER, III
                                                         JULY 15, 2014
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

        Afshin Farashahi for appellant.

        Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        Cameron Paul Crockett appeals his conviction of involuntary manslaughter, Code

§ 18.2-36.1(A). He maintains the trial court erred in denying his motion for a new trial on the basis

of newly discovered evidence and in denying his motion based upon Batson v. Kentucky, 476 U.S.

79 (1986). Concluding the trial court did not err, we affirm.

        The defendant was charged with aggravated involuntary manslaughter of Jack Korte, Code

§ 18.2-36.1(B). At his first jury trial in May 2011, the jury returned a verdict of guilty of

involuntary manslaughter, but was unable to reach a verdict on punishment. The trial court declared

a mistrial and conducted a second jury trial on March 1, 2012 on the lesser charge of involuntary

manslaughter. The jury again convicted the defendant of involuntary manslaughter. When the

defendant absconded to Guatemala, the trial court conducted the penalty phase in his absence, and

the jury fixed punishment at five years of imprisonment. The defendant was returned to the

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, and the trial court held the sentencing hearing on December 17, 2012. Before entering judgment on the verdict, the trial court heard motions for a new trial, which it denied. It then entered judgment on the verdict and imposed the sentence of five years imprisonment.

The charge arose on December 28, 2008 when a car slammed into a tree in the 2100 block of Wolfsnare Road, Virginia Beach, killing Korte, who was in the front passenger seat. The defendant was also found in the car. Numerous residents of that area heard the sounds as the car slid out of control and struck the tree, but Pamela Patrick, Antoine Smith, and James Reid were the primary witnesses. They described seeing the car speed down Wolfsnare Road, lose control, and wreck. They explained what they observed about the car and its occupants immediately after impact. The police arrived at the scene about ninety seconds after the wreck.

The Commonwealth maintained the defendant was the driver and the only other person in the car. The defendant maintained a third person, Jacob Palmer, was the driver and fled from the wreck without being seen by anyone at the accident scene. The factual issue at trial was the identity of the driver.

The defendant's motion for a new trial was based on a claim of three instances of newly discovered evidence: expert evidence that the driver was wearing a seatbelt; allegedly exculpatory statements provided by the Commonwealth after the trial; and evidence of third party confessions. After argument by counsel, the trial court noted in summary that the motion presented two scenarios of after-discovered evidence: a new expert opinion about the seatbelt and evidence of inculpatory statements made by a third party. The trial judge found that the expert opinion about the seatbelt mechanism could have been secured for use at the trial in the exercise of reasonable diligence. The court ruled that the evidence provided by the new expert opinion could have been available at trial and therefore was not a basis for a new trial.

The trial court then took evidence on the claim that two witnesses heard Palmer state that he was the driver. It found that one witness denied hearing Palmer make such a statement and that the other witness' statement was vague. The court found the testimony implicating another driver to be suspect and unlikely to result in a different outcome. The trial court ruled the proffered evidence would not produce an opposite result at a new trial and denied the motion for a new trial.

The defense argument, as it pertained to the statements provided by the Commonwealth after the trial, was incorporated primarily into the broad argument for a new trial based on after-discovered evidence. These statements were used in conjunction with the other two assertions of after-discovered evidence to show the three instances of after-discovered evidence cumulatively were sufficient to meet the requirements for a new trial. To the extent that the three statements provided by the Commonwealth could also be the basis for a claim for a new trial based on Brady v. Maryland, 373 U.S. 83 (1963), the trial court made no ruling. It did not decide if the statements were material or would have produced a different result had they been disclosed before trial.

In this appeal, the defendant first argues that the trial court erred in denying his motion for a new trial because the Commonwealth failed to disclose exculpatory evidence in a timely manner. The court made no ruling on the defendant's challenge to the extent it rested on a claim that the Commonwealth had violated Brady.

It is well settled that where the trial court does not rule on an objection, "there is no ruling for us to review on appeal." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998). In this case, the trial court did not rule on any Brady challenge, and counsel never sought such a ruling. "Hence, the objection was not saved for our consideration." Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967).

In any case, the statements of Patrick, Smith, and Reid provided after the trial would not meet the Brady requirement of materiality. See Workman v. Commonwealth, 272 Va. 633, 644-45,

- 3 -

636 S.E.2d 368, 374-75 (2006) (finding that a conviction is reversed only if the evidence was material in the sense that the suppression of it undermined the confidence in the outcome of the trial). The statements offered minor variations in the details in their testimony but did not touch on the issue in dispute: was someone other than the defendant driving.

In this appeal, the defendant next argues the trial court erred in denying his motion for a new trial based upon after-discovered evidence that the driver's seatbelt was used. In Hopkins v. Commonwealth, 20 Va. App. 242, 456 S.E.2d 147 (1995) (*en banc*), this Court held:

> "The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial."

Id. at 249, 456 S.E.2d at 150 (quoting Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387 (1984)).

At all stages of this case, the defense was the defendant was not the driver. The defense had access to the car before defendant's trials. Prior to the sentencing hearing, the defendant obtained a new attorney and a new expert. The report prepared by the second expert only "suggests" that the driver's seatbelt was in use at the time of the accident. This opinion offered by the new expert could have been reached before trial by the exercise of reasonable diligence. The defendant had access to the car, and an expert examined it before his trial. The trial judge did not abuse his discretion in finding reasonable diligence would have produced the evidence and in denying a new trial based upon this after-discovered evidence.

In his third assignment of error, the defendant maintains the trial court erred in denying his motion for a new trial based upon evidence of a third party confession. The defendant contended that Palmer was the driver of the car. He maintained that two different witnesses overheard Palmer admit that he was the driver at the time of the wreck.

The defendant proffered that Shaun Hoover could testify that Palmer admitted to him that he was the driver of the car. However, at the hearing on the motion for a new trial, Hoover did not testify that Palmer drove the car. To the contrary, Hoover testified that Palmer never told him that he was driving the car.

The second witness at the hearing on the motion, Elizabeth Wales, testified that she knew Palmer from Cox High School, which they both attended. She overheard Palmer say, "I just got free. I thought I killed them both." Wales testified that Palmer also mentioned the name "Jack." Wales did not come forward with her evidence until June 2012, and she was unsure if she overheard the conversation in 2010 or 2011. She only came forward after she saw a statement that the defendant's girlfriend posted on Facebook, which maintained the defendant had been wrongly convicted.

At the conclusion of the evidence on the motion, the trial judge was troubled by Hoover's testimony, found that Wales' testimony was vague at best, and determined that Wales' testimony would not produce a different result at another trial.

Trial counsel was aware of the defendant's contention that Palmer was the driver prior to trial. At trial, the defendant called witnesses who saw Korte, Palmer, and the defendant at a party before the wreck with the intent to show Palmer disappeared from the party for a period of time. Defense counsel and his investigator spoke to Palmer prior to trial but elected not to call Palmer as a witness. The trial judge heard Wales' testimony and observed her demeanor and determined that her testimony was vague and was unlikely to produce a different result in another trial. A review of the record shows that the trial judge did not abuse his discretion in ruling that the evidence was unlikely to produce an opposite result at another trial and in denying the motion for a new trial based upon after-discovered evidence.

In his last assignment of error, the defendant maintains the trial court erred in denying his motion based upon Batson because the Commonwealth used two peremptory strikes to remove two African-American women from the venire. The defendant argues the trial court erred by ruling that he failed to make a prima facie case of purposeful discrimination.

The Commonwealth struck two African-American women from the venire. There were a total of four or five African-Americans on the venire, and the defendant struck one African-American woman himself. The defendant objected, but he made no attempt at showing a pattern of discrimination. He stated simply that striking the two African-American women established a pattern. The trial judge found that there was no pattern of discrimination and overruled the defendant's objection.

"The fact that the prosecution has excluded African-Americans by using peremptory strikes does not itself establish such a prima facie case under Batson. A defendant also must identify facts and circumstances that raise an inference that potential jurors were excluded based on their race." Johnson v. Commonwealth, 259 Va. 654, 674, 529 S.E.2d 769, 780-81 (2000) (citations omitted); see Juniper v. Commonwealth, 271 Va. 362, 407, 626 S.E.2d 383, 412 (2006); Yarbrough v. Commonwealth, 262 Va. 388, 394, 551 S.E.2d 306, 309 (2001).

The fact the Commonwealth excluded African-Americans by using peremptory strikes did not establish a prima facie case of racial discrimination. The defendant made no attempt to identify facts and circumstances that would raise the inference that the Commonwealth struck the two females based upon their race. There is no evidence of purposeful discrimination by the Commonwealth in the jury selection process. Thus, the record supports the trial court's ruling that the defendant failed to make a prima facie showing of purposeful discrimination under Batson.

In conclusion, we hold that the trial court did not err in its several rulings on the motions for a new trial and the defendant's challenge based upon <u>Baston</u>.  Accordingly, we affirm.

<u>Affirmed.</u>