COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Raphael
Argued at Lexington, Virginia

DEVIN OSHEA JONES

v.      Record No. 0842-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
MAY 21, 2024

FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
Robert H. Morrison, Judge

Steven D. McFadgen Sr. (McFadgen Law, PLC, on brief), for
appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the Circuit Court of Charlotte County convicted Devin Oshea Jones

of possession or transportation of a firearm by a convicted violent felon, in violation of Code

§ 18.2-308.2.[1] On appeal, Jones argues that the trial court erred in denying his *Batson* challenge

to the Commonwealth's use of two of its four peremptory strikes. *See Batson v. Kentucky*, 476

U.S. 79 (1986).

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Commonwealth moved to *nolle prosequi* a charge for possession of ammunition by
a convicted felon, and the trial court granted the Commonwealth's motion for good cause shown.

(2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Jones was charged with possessing or transporting a firearm after having been convicted of a violent felony. Jones pleaded not guilty to the charge and requested a jury trial. During jury selection, the Commonwealth made four peremptory strikes, including three strikes on potential jurors who were African American. Jones's counsel objected to the Commonwealth striking two of the African American potential jurors — C.S.[2] (Juror 8) and R.S. (Juror 20).[3] In making his objection, Jones's counsel argued to the trial court, "My client believes the only reason that those witnesses were struck were because of their race." He also argued to the trial court that there were "no questions that were brought up that, or any answers that, [Juror] eight or [Juror] 20 answered or said anything to the effect that would give the prosecution cause to strike them at this juncture." Relying on the United States Supreme Court's decision in *Batson*, Jones's counsel alleged that the Commonwealth "may have tainted the jury by striking those two jury members with no---with what we believe would be no real reason for striking them except they were African American."

The Commonwealth's Attorney responded to Jones's *Batson* challenge by proffering that he struck Juror 8 "based upon the perceived reaction at that point that that juror might be inclined to go along with the defense and whatever arguments were made by the defense at that point." The Commonwealth's Attorney noted that Juror 8 was "nodding pretty much in agreement with everything that Mr. McFadgen [defense counsel] said" during voir dire. Next, the Commonwealth's

---

[2] We use initials to identify the potential jurors in an attempt to protect their privacy.

[3] Jones's counsel was clear that he did not allege a *Batson* challenge with regard to the Commonwealth's peremptory strike against the third African American potential juror.

Attorney proffered that he struck Juror 20 because "his body language certainly to me indicated something of a lack of interest in what was going on. He was looking down. He was looking away. He wasn't paying I did not believe a great deal of attention to what was going on in the course of the voir dire." The Commonwealth's Attorney asserted that the two peremptory strikes had "[n]othing to do with race" and were instead "[s]imply related to the indications that we received with response to - - really the body language on both of those" potential jurors.

Finding that Jones failed to make "a prima facie case of a *Batson* issue," the trial court denied Jones's *Batson* challenge. The trial court further found that "the Commonwealth has offered meaningful observations as to the basis" for the strikes. At the conclusion of the trial, the jury found Jones guilty of possessing or transporting a firearm as a convicted violent felon. Jones now appeals the trial court's denial of his *Batson* challenge.

## II. ANALYSIS

On appeal to this Court, Jones argues,

> The trial court erred finding Defendant failed to establish a *prima facie* case of racial exclusion at trial because an inference of purposeful racial exclusion can be drawn from the facts that (1) the Commonwealth's use of a disproportionate number of peremptory strikes on African-Americans without meaningful questioning of them and (2) the Commonwealth's use of peremptory strikes changed the racial majority of the *venire* from African American to Caucasian.

The Supreme Court of Virginia has consistently held, "On appellate review, the trial court's conclusion regarding whether reasons given for the strikes are race-neutral is entitled to great deference, and that determination will not be reversed on appeal unless it is clearly erroneous." *Avent v. Commonwealth*, 279 Va. 175, 196 (2010) (quoting *Jackson v. Commonwealth*, 266 Va. 423, 437 (2003), *cert. denied*, 543 U.S. 842 (2004)). As the Supreme Court of Virginia has explained, "This deference is understandable because the judicial 'evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly

- 3 -

within a trial judge's province.""" *Bethea v. Commonwealth*, 297 Va. 730, 756 (2019) (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991)). "'[I]n the absence of exceptional circumstances,' therefore, appellate courts should 'defer to the trial court' because '[a]ppellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation.'" *Id.* at 757 (alterations in original) (quoting *Davis v. Ayala*, 576 U.S. 257, 274 (2015)).

In *Batson*, the Supreme Court of the United States ruled that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson*, 476 U.S. at 89. There are three sequential steps involved in a *Batson* challenge:

> (1) the opponent of the strike "must make out a prima face case" of purposeful discrimination; (2) "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes"; and (3) "if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination."

*Bethea*, 297 Va. at 748 (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005) (alterations and citations omitted)). "The three-step architecture of *Batson* presumes the good faith of prosecutors." *Id.* "[T]he defendant ultimately carries the 'burden of persuasion' to 'prove the existence of purposeful discrimination.'" *Johnson*, 545 U.S. at 170-71 (quoting *Batson*, 476 U.S. at 93).

Addressing the requisite first step in a *Batson* challenge, the Supreme Court of Virginia has previously explained:

> When a defendant makes a *Batson* challenge to the use of a peremptory strike, he must show that the individual "is a member of a cognizable racial group," and "make a prima facie showing that the peremptory strike was made on racial grounds." Mere exclusion of members of a particular race by using peremptory strikes "does not itself establish such a prima facie case under *Batson*." To establish a prima facie case, the defendant must also

> "identify facts and circumstances that raise an inference that potential jurors were excluded based on their race."

*Lawlor v. Davis*, 288 Va. 223, 230 (2014) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 407 (2006)). "[U]nder step one of *Batson*, a prima facie case need not 'show that it is more likely than not' that the basis of the strike was purposeful racial discrimination." *Bethea*, 297 Va. at 749. "Finding that evidence satisfies the prima facie standard only means that a reasonable factfinder could rationally accept the evidence . . . as satisfying the applicable burden of proof, and it does not mean the proponent of the prima facie case has in fact proven his case." *Id.* at 750.

Here, the trial court found that there was "not a prima facie case of a *Batson* issue," and the record supports the trial court's determination that Jones failed to establish a prima facie case of purposeful discrimination. Jones's counsel argued to the trial court that, for the two challenged peremptory strikes, "there was nothing in there in regards to the Commonwealth striking them except they were black." However, Jones's counsel proffered no basis for his assertion that the strikes were racially motivated other than his observation that the Commonwealth's two peremptory strikes at issue in this appeal were used on African American potential jurors. Jones's counsel also did not identify to the trial court any other "facts and circumstances that raise an inference that potential jurors were excluded based on their race," and he does not do so in this Court on appeal. *Juniper*, 271 Va. at 407 (quoting *Yarbrough v. Commonwealth*, 262 Va. 388, 394 (2001)). As noted *supra*, the Supreme Court has stated, "Mere exclusion of members of a particular race by using peremptory strikes 'does not itself establish such a prima facie case under *Batson*.'" *Lawlor*, 288 Va. at 230 (quoting *Juniper*, 271 Va. at 407). Therefore, we do not find that the trial court erred in ruling that Jones failed to establish a prima facie case of purposeful discrimination.

However, even if Jones had made a prima facie case of purposeful discrimination, the Commonwealth's Attorney provided race-neutral explanations for striking the two potential jurors, and Jones failed to prove that the Commonwealth's explanations were pretextual and actually based on race. As the Supreme Court of Virginia has reiterated, "Once a defendant makes a prima facie case, the burden shifts to the Commonwealth 'to produce race-neutral explanations for striking the juror.'" *Lawlor*, 288 Va. at 230 (quoting *Juniper*, 271 Va. at 436). "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez*, 500 U.S. at 359.

This Court has made clear that "[a]fter the prosecution provides a race-neutral and gender-neutral explanation for striking the juror, '[t]he defendant may then provide reasons why the prosecution's explanations were pretextual and the strikes were discriminatory regardless of the prosecution's stated explanations.'" *Griffin v. Commonwealth*, 78 Va. App. 116, 137 (2023) (second alteration in original) (quoting *Jackson*, 266 Va. at 436). "The question of '[w]hether the defendant has carried his burden of proving purposeful discrimination in the selection of the jury is then a matter to be decided by the trial court.'" *Id.* (alteration in original) (quoting *Jackson*, 266 Va. at 436).

Here, in response to the *Batson* challenge made by Jones's counsel, the Commonwealth's Attorney explained that he struck Juror 8 because it appeared that she was "nodding pretty much in agreement with everything that Mr. McFadgen [defense counsel] said" during voir dire. The Commonwealth's Attorney expressed concern that Juror 8 "might be inclined to go along with the defense and whatever arguments were made by the defense at that point." The prosecutor then explained that he struck Juror 20 because "his body language . . . indicated something of a lack of interest in what was going on." The Commonwealth's Attorney specifically noted that

- 6 -

Juror 20 "was looking down" and was "looking away" during voir dire. Based on Juror 20's behavior during voir dire, the prosecutor said that he "made the assumption from that that he [Juror 20] very well may not pay attention through the rest of the case." Furthermore, the prosecutor maintained that the two strikes had "[n]othing related to race" and were instead based on "really the body language on both of those" potential jurors.

In short, the Commonwealth's Attorney based his reasons for striking Juror 8 and Juror 20 on his observations of the jurors' body language during voir dire — i.e., Juror 8's nodding in agreement with defense counsel's statements and Juror 20's disinterested "looking down" and "looking away." This Court has previously held, "A juror's body language or demeanor during voir dire is certainly a gender-neutral and race-neutral reason for striking a juror." *Griffin*, 78 Va. App. at 139. The trial court here found that "the Commonwealth has offered meaningful observations as to the basis" for the peremptory strikes. Given that this Court, unlike the trial court, does not have the ability on appeal to view the jurors' demeanor (or observe what may be motivating the prosecutor), this Court cannot (and should not try to) second-guess the trial judge's decision about the Commonwealth's likely motivation for striking these two potential jurors. *See id.* ("Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation." (quoting *Davis*, 576 U.S. at 274)).

In addition, Jones's counsel has made no showing that the prosecutor's explanation for striking the jurors was pretextual and based on race. "In this case, it was incumbent upon [Jones] to demonstrate that the reasons advanced by the Commonwealth for striking these potential jurors 'were purely a pretext for unconstitutional discrimination.'" *Avent*, 279 Va. at 197 (quoting *Juniper*, 271 Va. at 407). Jones's counsel has failed to do so. The prosecutor's explanations provided the trial court with a sufficient basis to conclude that the proffered reasons

for striking the jurors were race-neutral and not pretextual.  Consequently, for these reasons, we cannot say that the trial court erred in rejecting Jones's *Batson* challenge.

### III. CONCLUSION

In short, Jones failed to establish a prima facie case of purposeful discrimination in the use of peremptory strikes in the jury selection.  Furthermore, Jones made no showing that the Commonwealth's Attorney's explanations for striking the two African American jurors were pretextual and actually based on race.  The prosecutor's explanations also provided the trial court with a sufficient basis to conclude that the proffered reasons for striking these two potential jurors were, in fact, race-neutral and not pretextual in any way.  Consequently, we do not find that the trial court erred when it rejected Jones's *Batson* challenge.

Therefore, for all of these reasons, we affirm the trial court's judgment and uphold Jones's conviction for possession or transportation of a firearm by a convicted violent felon.

*Affirmed.*