380 S.E.2d 1 (1989)
Kenneth Wayne JACKSON
v.
COMMONWEALTH of Virgina.
Record No. 1467-86-2.
Court of Appeals of Virginia.
May 2, 1989.
Rehearing En Banc Granted June 9, 1989.
*2 Lawrence D. Diehl (Marks, Stokes & Harrison, Hopewell, on brief), for appellant.
H. Elizabeth Shaffer, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BENTON, BAKER and COLE, JJ.
BENTON, Judge.
In this appeal, Kenneth Wayne Jackson contends that the Commonwealth exercised its peremptory challenges to exclude blacks from the circuit court jury and that the trial court erred in overruling his motion to dismiss the jury. For the reasons which follow, we reverse the convictions and remand the case for a new trial.
Jackson was tried by jury and convicted of both armed robbery of a store clerk and use of a firearm in the commission of the robbery. During the voir dire examination, the judge asked twenty members of the jury panel several questions regarding their abilities to render a fair and impartial verdict. When asked whether they or any member of their immediate families had been the victim of a robbery, four of the persons responded affirmatively. One of the four stated that this circumstance would affect his ability to be fair; he was stricken from the panel and replaced. During voir dire, the Commonwealth's attorney asked only one question of clarification to one of the three persons who previously had responded affirmatively to the judge's question. Defense counsel asked whether any panel members were related to a police officer or would favor the testimony of a police officer over other parties. Defense counsel also asked whether any panel member was employed by or related to an employee of the oil company that owned the store where the robbery occurred.
The Commonwealth's attorney and defense counsel then exercised four peremptory challenges each to strike eight persons from the panel. Jackson, who is black, moved to dismiss the impanelled jury on the ground that the Commonwealth's attorney unlawfully struck three black persons from the panel. Two black persons remained on the jury.
The trial judge inquired as to the Commonwealth's reasons for striking the three black persons from the panel. The following colloquy occurred:
COMMONWEALTH'S ATTORNEY: Judge, as in all strikes from the jury, they are based on subjective factors often, and not on objective factors in that the Commonwealth has four grantory strikes just like the defendant has without any cause whatsoever being shown. There are still blacks remaining on the jury. The Commonwealth could have struck even more blacks. But the Commonwealth chose not to do so. The Commonwealth, in fact, struck a white as well ... Race had absolutely nothing to do with any ...
COURT: Any subjective reasons that you could state along with what you have already said or articulated for the purposes of the record?
COMMONWEALTH'S ATTORNEY: ... I struck Mr. Sammy McQueen who looked to be about the same age as the defendant.
* * * * * *
COURT: All right, were there any others as related to your other two strikes?
* * * * * *
COMMONWEALTH'S ATTORNEY: The addresses, Judge, was [the] next consideration on those other two [jurors].
Defense counsel responded by stating:
I would like to submit to the Court that Mr. McQueen's age is no where near the defendant's age and that the addresses of the parties in question, that the alleged crime or anywhere near [sic] where this man lived at the time or any time prior thereto.
Immediately following defense counsel's response, the trial court overruled Jackson's motion, finding that the Commonwealth *3 "has not systematically excluded members of the defendant's race from the jury panel."
The United States Supreme Court decision, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), provides the framework for disposition of this appeal. In Batson, the Supreme Court reconsidered the rule of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which held that purposeful or deliberate exclusion of blacks from jury participation violates the equal protection clause. Swain, however, held that in the absence of direct evidence of intentional discrimination, discriminatory intent or purpose could be inferred only by proof of a prosecution's systematic use of peremptory challenges to exclude blacks in a series of cases. 476 U.S. at 90-92, 106 S.Ct. at 1719-1720. Recognizing that the Swain rule "placed on defendants a crippling burden of proof," id. at 92, 106 S.Ct. at 1720, the Court in Batson stated: "For evidentiary requirements to dictate that `several must suffer discrimination' before one could object would be inconsistent with the promise of equal protection to all." Id. at 95-96, 106 S.Ct. at 1722-1723 (citation omitted). The Court thus concluded that a defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." Id. at 96, 106 S.Ct. at 1722-1723.
In order to establish a prima facie case, the defendant "must show that he is a member of a cognizable racial group, ... that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, ... [and] that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the ... jury on account of their race." Id. (citations omitted); see also Taitano v. Commonwealth, 4 Va.App. 342, 346, 358 S.E.2d 590, 592 (1987) (applying Batson.) In making a prima facie case, the defendant is entitled to rely on the fact that peremptory challenges permit "`those to discriminate who are of a mind to discriminate.'" Batson, 476 U.S. at 96, 106 S.Ct. at 1722-1723 (quoting Avery v. Georgia, 345 U.S. 559, 562, 73 S.Ct. 891, 892-893, 97 L.Ed. 1244 (1953)).
Once the defendant makes the requisite showing, the burden shifts to the Commonwealth to come forward with a racially neutral explanation for removing persons of defendant's race from the panel. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The Commonwealth may not rebut the defendant's prima facie case by stating merely that it challenged jurors of defendant's race on the assumption that they would be partial to the defendant based upon their shared race. Id. "Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirm[ing] [his] good faith in making individual selections.'" Id. at 98, 106 S.Ct. at 1723-1724 (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)). "The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." Id. (footnotes omitted).
The Commonwealth argues that, as a threshold matter, Jackson failed to establish a prima facie case of purposeful discrimination because two blacks remained on the jury panel following exercise of all peremptory challenges. The record in the present case reveals that the trial court did not specifically rule on whether Jackson had established a prima facie case of purposeful discrimination. Acknowledging generally the Batson decision, the trial court merely inquired into the Commonwealth's attorney's avowed "subjective reasons" for excluding the three black jurors, without either enumerating the Batson criteria or ruling on whether these criteria were met.
In Taitano, this Court left open the question whether the presence of members of defendant's racial group on the jury after exercise of all peremptory challenges precludes a finding of racial discrimination.
*4 4 Va.App. at 347, 358 S.E.2d at 592. In Taitano, the Commonwealth had used all four of its peremptory challenges to strike black males from the jury panel. Id. at 345, 358 S.E.2d at 591. Three black females and two black males remained on the panel. Id. This Court assumed, without deciding, that Taitano had established a prima facie case, id. at 347, 358 S.E.2d at 592, but found the Commonwealth's reasons sufficient to rebut a prima facie showing of purposeful discrimination. Id. at 347-48, 358 S.E.2d at 593. In the present case, the Commonwealth urges this Court to adopt the position that where members of a cognizable racial group remain on the impanelled jury, the defendant has failed to establish a prima facie case of racial discrimination. We decline to do so.
In Batson, the Supreme Court did not specify the quantum of proof necessary to establish a prima facie case of purposeful discrimination. In implementing Batson, however, some courts have refused to find purposeful discrimination in cases where blacks remain on the jury after exercise of all peremptory challenges. See, e.g., State v. Moore, 490 So.2d 556, 558-59 (La.Ct.App. 1986) (where "the first jury member selected by both the State and defendant was a black man" and "the State accepted [as a juror] a black woman who was then peremptorily challenged by the defendant."); Clay v. State, 290 Ark. 54, 60, 716 S.W.2d 751, 755 (1986) (no prima facie case where several black persons remained on ultimate panel, State had strikes remaining, and no indication of discrimination in record). Other courts have found that striking a single black juror could constitute a prima facie case even when blacks ultimately sit on the jury panel. See, e.g., United States v. Clemons, 843 F.2d 741, 747 (3d Cir.1988) ("mere presence of a single black on the jury would not necessarily prevent a finding of a prima facie case") cert. dismissed, ___ U.S. ___, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987) ("the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated"), modified, 836 F.2d 1312 (11th Cir.1988); State v. Slappy, 522 So.2d 18, 21 (Fla.) (numbers alone are not dispositive of whether peremptory challenges are discriminatory, "nor even the fact that a member of the minority in question has been seated as a juror"), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). Batson itself presented a case in which the defendant was convicted by an all white jury, all blacks having been excluded from the jury through the exercise of peremptory challenges. 476 U.S. at 83, 106 S.Ct. at 1715.
Nothing in Batson mandates, however, the "complete exclusion of a racial group in order to prove discrimination." People v. Johnson, 159 Ill.App.3d 991, 996, 112 Ill.Dec. 243, 246, 513 N.E.2d 852, 855 (citing People v. Seals, 153 Ill.App.3d 417, 422-23, 106 Ill.Dec. 316, 320, 505 N.E.2d 1107, 1111 (1987)), appeal denied, 117 Ill.2d 549, 115 Ill.Dec. 405, 517 N.E.2d 1091 (1987), cert. denied, ___ U.S. ___, 109 S.Ct. 84, 102 L.Ed.2d 60 (1988). To the contrary, under Batson, the trial judge is required to consider all relevant circumstances, including, but not limited to (1) a pattern of strikes against persons of the cognizable racial group included in the particular venire, which might give rise to an inference of discrimination, and (2) the Commonwealth's attorney's questions and statements during voir dire examination and in exercising his challenges. 476 U.S. at 96-97, 106 S.Ct. at 1722-1723. Establishing some magic number or percentage to trigger a Batson inquiry would short circuit the case-by-case determination whether the "facts and any other relevant circumstances raise an inference" of discrimination. Batson, 476 U.S. at 96, 106 S.Ct. at 1722; Clemons, 843 F.2d at 746; see also United States v. Montgomery, 819 F.2d 847, 851 (8th Cir.1987) ("Batson does not require that the government adhere to a specific mathematical formula in the exercise of its challenges").
Just as the mere exclusion of one or more blacks from the jury does not always give rise to an equal protection violation, Batson, 476 U.S. at 101, 106 S.Ct. at 1725 *5 (White, J., concurring), so too, the mere inclusion of blacks on a jury does not automatically preclude a finding of a prima facie case, especially where other facts and circumstances give rise to an inference of prosecutorial discrimination. Clemons, 843 F.2d at 748. "`A single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" Batson, 476 U.S. at 95, 106 S.Ct. at 1722 (quoting Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266, n. 14, 97 S.Ct. 555, 564, n. 14, 50 L.Ed.2d 450 (1977)); see also Stanley v. State, 313 Md. 50, 72-73, 542 A.2d 1267, 1278 (1988) ("question is whether the state exercised any of its strikes for a racially discriminatory reason, for if it did, Batson was violated"). Because a single act of invidious discrimination may form the basis for an equal protection violation, adoption of a rule that precludes a finding of purposeful discrimination whenever a black remains on the jury could serve to insulate some types of discriminatory jury selection practices. Indeed, under such a rule, the Commonwealth would need only retain a single black juror, eliminating the rest, and thus immunize discriminatory challenges. See People v. Seals, 153 Ill.App.3d at 423, 106 Ill.Dec. at 320, 505 N.E.2d at 1111.
In the present case, a panel of twenty persons was qualified for selection on the jury. Discounting the challenges available to Jackson, a pool of sixteen persons was available to the Commonwealth, five of whom were black. The Commonwealth's attorney exercised three of four peremptory challenges to exclude three of the five black jurors. The Commonwealth thus used a disproportionate number of its peremptory challenges against the defendant's racial group. See id. (ten challenges used to exclude six blacks, one latino, and three whites); People v. James, 132 A.D.2d 932, 933, 518 N.Y.S.2d 266, 267 (1987) (defendant established prima facie case where five out of six blacks were peremptorily challenged by prosecutor, and fifty percent of his challenges were to black persons). The Commonwealth's attorney's use of a disproportionate number of challenges to strike black jurors is a relevant circumstance that must be considered in assessing Jackson's claim.
The record further indicates that the Commonwealth's attorney removed these three black persons virtually without questioning during voir dire. See Batson, 476 U.S. at 97, 106 S.Ct. at 1723 (prosecutor's questions and statements during voir dire examination are relevant to determination of prima facie case). Furthermore, the excluded group consisted of males and females whose only apparent common characteristic was their shared race. See People v. Seals, 153 Ill.App.3d at 423, 106 Ill.Dec. at 320, 505 N.E.2d at 1111 (disproportionate use of challenges coupled with lack of questions on voir dire established prima facie case). Under these circumstances, we find that Jackson satisfied the Batson standard for establishing a prima facie case; accordingly, the Commonwealth was required to come forward with a neutral explanation.
The next issue to be resolved is whether the Commonwealth articulated a racially neutral, non-pretextual reason for excluding the three black persons from the jury panel. As a preliminary matter, we agree with the Commonwealth that under Batson, trial court findings of fact are entitled to great deference on appeal. 476 U.S. at 98 n. 21, 106 S.Ct. at 1723-1724 n. 21. In the present case, however, the trial judge did little more than state a legal conclusion. The trial judge made no factual findings. Moreover, the trial judge's conclusion that members of the defendant's race were not "systematically excluded" is grounded in language reminiscent of the standard found in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In Batson the Supreme Court "reject[ed] this evidentiary formulation as inconsistent with standards that have been developed since Swain for assessing a prima facie case under the Equal Protection Clause." 476 U.S. at 93, 106 S.Ct. at 1721. Jackson was not required to prove a systematic exclusion. If the Commonwealth "exercised any of its strikes for a racially discriminatory reason, ... Batson was violated." *6 Stanley v. State, 542 A.2d at 1278. Batson requires the trial judge to evaluate the credibility of the asserted reasons based upon the totality of the circumstances of the case, as reflected in the record. See State v. Slappy, 522 So.2d at 22. Moreover, "[t]he explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes." Gamble v. State, 257 Ga. 325, 327, 357 S.E.2d 792, 795 (1987). The trial judge cannot merely accept at face value the reasons proffered but must independently evaluate those reasons as he would any disputed fact. Slappy, 522 So.2d at 22. Rubber stamp approval of all nonracial explanations will not satisfy the command of Batson. 476 U.S. at 97-98, 106 S.Ct. at 1723-1724; Stanley, 542 A.2d at 1281 (Batson implicitly requires inquiry into legitimacy of reasons). The record must contain findings by the trial judge, not just a conclusion, in order to facilitate both the initial inquiry and appellate review. Stanley, 542 A.2d at 1277; see generally Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection?, 74 Va.L.Rev. 811 (1988).
Under Batson, although the Commonwealth's attorney's explanations need not rise to the level justifying challenge for cause, 476 U.S. at 97, 106 S.Ct. at 1723, they must be clear, reasonably specific, and related to the particular case to be tried. Id. at 98 n. 20, 106 S.Ct. at 1723-1724 n. 20 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)). In the present case, when requested by the trial judge to articulate his reasons for striking the three black jurors, the Commonwealth's attorney initially stated, "[t]he Commonwealth could have struck even more blacks," and that "[r]ace had absolutely nothing to do with any...." Finally, after some prompting, the Commonwealth's attorney stated, "I struck Mr. Sammy McQueen who looked to be about the same age as the defendant" and "[t]he addresses, Judge, was [the] next consideration on those other two [jurors]." The Commonwealth's attorney's initial statement is simply nonresponsive to the trial judge's request. The second statement constitutes a general denial of discriminatory motive, which is insufficient to rebut a prima facie showing of purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1723-1724; Taitano, 4 Va.App. at 346, 358 S.E.2d at 592.
The Commonwealth argues that the explanations relating to a juror's age or address are specific, racially neutral considerations. Further, the Commonwealth argues that such considerations were held sufficient to rebut the defendant's prima facie showing in Taitano, 4 Va.App. at 347, 358 S.E.2d at 592-93. This argument, however, misses the mark. It is not enough for the Commonwealth, in rebutting the defendant's case, to adopt rote "neutral explanations" which are only facially legitimate. Stanley, 542 A.2d at 1281. If this were sufficient, the Batson inquiry would amount to little more than a charade. In Taitano, a panel of this Court held that the Commonwealth provided affirmative support for the asserted reasons and demonstrated as well as specific relationships between the reasons proffered and the facts of the case. 4 Va.App. at 345, 358 S.E.2d at 591. By contrast, the record in this case simply contains the bare allegation that the jurors' ages and addresses were "considerations," without an explanation why these facts were significant or how they related to the facts of this particular case. The Commonwealth's attorney's observation that McQueen "looked to be about the same age as defendant" amounts to nothing more than a conclusory allegation. Defense counsel responded by disputing the assertion that McQueen and the defendant were the same age. The trial judge made no finding concerning the relative ages of McQueen, the defendant, and other persons who were not struck from the jury, nor did the trial judge inquire further or make findings concerning the relevance of the age factor.
As to the addresses, although the jury list does contain the jurors' addresses, the record does not disclose the defendant's *7 address. Further, the Commonwealth did not articulate in what respect the addresses were relevantwhether due to their proximity to Jackson's address, the scene of the crime, or the scene of the arrest. See Garrett v. Morris, 815 F.2d 509, 513 (8th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987) (prosecutor's blanket assertion that three black jurors lacked "background education and knowledge" insufficient where unsupported by record). Significant too is the fact that the Commonwealth's attorney did not question any of the jurors concerning their ages or addresses on voir dire, yet he chose to exclude the three black members on this basis. See People v. Turner, 42 Cal.3d 711, 726-727, 726 P.2d 102, 111, 230 Cal. Rptr. 656, 665, (1986) (prosecutor's failure to engage black prospective jurors in more than desultory voir dire is a factor supporting inference of group bias). The trial court's immediate acceptance of these explanations at face value without inquiry into the ages or addresses of jurors who were and were not challenged, and without inquiring as to the relevance of those circumstances to the case, undermine the conclusion that the challenges were not discriminatory. Id. at 727-28, 726 P.2d at 112, 230 Cal.Rptr. at 666. The Commonwealth's attorney did not "articulate a neutral explanation related to the particular case to be tried." Batson, 476 U.S. at 98, 106 S.Ct. at 1723-1724. Furthermore, the explanations were vague enough that they "`demanded further inquiry.'" Turner, 42 Cal.3d at 727-28, 726 P.2d at 112, 230 Cal.Rptr. at 666 (quoting People v. Hall, 35 Cal.3d 161, 672 P.2d 854, 858, 197 Cal.Rptr. 71, 76 (1983)). This record does not contain a factual basis to support the Commonwealth's attorney's explanations and the trial judge's conclusion.
In sum, we find that Jackson met his burden in establishing a prima facie case of purposeful discrimination even though two blacks remained on the jury panel. Accord United States v. Clemons, 843 F.2d at 747; State v. Slappy, 522 So.2d at 24; People v. Seals, 153 Ill.App.3d at 423, 106 Ill.Dec. at 320, 505 N.E.2d at 1111. We further find that the Commonwealth's asserted reasons were insufficient to rebut the prima facie case. The conviction is therefore reversed and the case remanded for a new trial before a properly selected jury. Gamble v. State, 257 Ga. at 330, 357 S.E.2d at 797.
Reversed and remanded.
BAKER, Judge, dissenting.
The majority characterizes the prosecutor's statements as "conclusory." I respectfully disagree. The prosecutor stated his reasons for using his strikes as he did and they were clear and uncontradicted by any evidence in this record. The prosecutor was the only person who could make the neutral explanation required by Batson and while it would have been a simple matter to have contested his statements had they not been true, Jackson made no proffer of evidence.
We were instructed by the panel which granted this appeal to determine whether the record contains sufficient evidence to support the trial court's finding that the prosecutor did not systematically strike three members of the black race from the jury. In the absence of any evidence to the contrary, I am of opinion that the trial court could reasonably infer from the prosecutor's explanation that the Commonwealth's reason for exercising its peremptory strikes was that those prospective jurors might be acquainted with Jackson, his family or his friends. See Taitano v. Commonwealth, 4 Va.App. 342, 346, 358 S.E.2d 590, 592 (1987).
On this record, I cannot say that the judgment of the trial court was plainly wrong or without evidence to support it. Accordingly, I would affirm its judgment.