COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
           Haley, Petty and Beales
Argued at Richmond, Virginia


RODNEY WILLIAM LIGHTFOOT

                                                          OPINION BY
v.       Record No. 3133-05-2             JUDGE ELIZABETH A. McCLANAHAN
                                                       DECEMBER 11, 2007
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Gregory R. Sheldon (Bain-Sheldon, P.L.C., on brief), for appellant.

Karri B. Atwood, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


A jury convicted Rodney William Lightfoot of three counts of robbery, three counts of

using a firearm in the commission of a felony, and being armed while entering a bank with the

intent to commit larceny.  At trial, Lightfoot made a Batson motion in response to the

Commonwealth's use of peremptory strikes to remove two African-American women from the

venire, which the trial court denied.  See Batson v. Kentucky, 476 U.S. 79 (1986).  Lightfoot

contends the court erred in ruling that he failed to establish a *prima facie* case of purposeful

discrimination under Batson.  A panel majority of this Court agreed with Lightfoot and reversed

the decision of the trial court.  We granted a petition for rehearing *en banc* and stayed the

mandate of the panel decision.  Upon rehearing *en banc*, we affirm the trial court.

## I. BACKGROUND

Three African-Americans, one male and two females, were included in the venire of twenty potential jurors (after three individuals were released for cause). Using two of its four peremptory strikes, the Commonwealth struck the two African-American females from the venire after completion of *voir dire*. One was Wanda Mead. The record does not reveal the identity of the second African-American female. The African-American male remained on the jury panel.

During *voir dire*,[1] the Commonwealth asked, *inter alia*, if any of the potential jurors had friends or relatives who had been charged with crimes in the past. Two individuals on the venire responded affirmatively, Mead and Thomas Ewing, a Caucasian. Mead stated that a family member had been charged with a traffic offense. Ewing explained that his daughter had been charged with a felony. Like Mead, Ewing was subsequently struck by the Commonwealth. Additionally, in response to a follow-up question by the Commonwealth, an unidentified female on the panel indicated familiarity with one of the Commonwealth's witnesses.

A number of potential jurors also gave affirmative responses to questions by Lightfoot's counsel, indicating a potential for bias. Some of those respondents are unidentified from the record. One unidentified individual stated that he or she went to high school with Lightfoot. Mead also revealed at that time she had visited someone in jail or prison.

After *voir dire* was completed and the parties exercised their peremptory strikes, Lightfoot made a Batson motion on the grounds the Commonwealth had used two of its four strikes to remove two of the three African-Americans. In further support of the motion (apart

---

[1] The trial judge first asked the potential jurors a series of questions, resulting in two individuals being released for cause. The third individual was released for cause during *voir dire* conducted by defense counsel.

from simply pointing to these numbers), Lightfoot's counsel asserted that the Commonwealth did not question either of the two African-American women, whom it struck, and that neither of them responded during *voir dire* to any of the questions posed by the parties' respective counsel or the trial court. Such circumstances, according to Lightfoot, indicated the Commonwealth improperly struck these two African-Americans based on race.

The Commonwealth denied the assertion of Lightfoot's counsel that the two African-American women did not respond to questioning during *voir dire*, pointing specifically to Mead's affirmative response to the prosecutor's questioning, along with Ewing, resulting in both being struck by the Commonwealth. The trial court agreed with the Commonwealth, finding that Lightfoot's counsel was "not correct" in that assertion. The trial court also ultimately agreed with the Commonwealth that Lightfoot had not established a *prima facie* case of purposeful discrimination under Batson "based on what [his counsel had] articulated."

## II. ANALYSIS

### A.

The United States Supreme Court held in Batson that the peremptory exclusion of a potential juror based solely on the juror's race "is purposeful discrimination and a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." Jackson v. Commonwealth, 266 Va. 423, 435, 587 S.E.2d 532, 542 (2003). Under Batson's three-step test, a defendant asserting such a violation initially "must show that the individual 'is a member of a cognizable racial group,' Yarbrough v. Commonwealth, 262 Va. 388, 394, 551 S.E.2d 306, 309 (2001), cert. denied, 535 U.S. 1060 (2002) (quoting Batson, 476 U.S. at 96), and 'make a *prima facie* showing that the peremptory strike was made on racial grounds.' Jackson, 266 Va. at 436, 587 S.E. 2d at 542." Juniper v. Commonwealth, 271 Va. 362, 407, 626 S.E.2d 383, 412 (2006). "[If] a *prima facie* case is put before the court, the burden shifts to the

- 3 -

prosecution 'to produce race-neutral explanations for striking the juror.' The defendant can then argue that the prosecution's explanations were purely a pretext for unconstitutional discrimination. Jackson, 266 Va. at 436, 587 S.E. 2d at 542." Id. Under each of Batson's three steps, however, the "burden of persuasion 'rests with, and never shifts from, the opponent of the strike.'" Johnson v. California, 545 U.S. 162, 170-71 (2005) (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)).[2]

The trial court's finding in the instant case that Lightfoot failed to establish a *prima facie* case of racial discrimination[3] under step one of Batson "is entitled to great deference" on appeal. Johnson v. Commonwealth, 259 Va. 654, 674, 529 S.E.2d 769, 780 (2000) (applying deferential

---

[2] A proponent of a peremptory strike sometimes proceeds to step two (offering an explanation for the strike) before the trial court makes a step one determination, at which time the court makes a step two ruling without having decided if a *prima facie* case was established under step one. On appeal, such a case is reviewed under step two of Batson, without regard to whether a *prima facie* case was made, because that issue is deemed waived. See Hernandez v. New York, 500 U.S. 352, 359 (1991); Faison v. Hudson, 243 Va. 397, 402, 417 S.E.2d 305, 308 (1992); Barksdale v. Commonwealth, 17 Va. App. 456, 459, 438 S.E.2d 761, 763 (1993) (*en banc*).

Here, the prosecutor stated his reasons for striking Mead when explaining to the trial court that Mead did, in fact, respond affirmatively to one of his questions during *voir dire*, contrary to defense counsel's assertion. (The reasons given were the same as those apparent on the record for striking her. See *infra*, Part II(B)(i)). The prosecutor did so in the context of asserting that Lightfoot had made no step one *prima facie* showing, and the trial court made the step one determination, which was dispositive. Therefore, our review is necessarily limited to that step one determination.

[3] Lightfoot contends on appeal he established a *prima facie* case of both racial and gender discrimination in the Commonwealth's exercise of peremptory strikes to remove the two African-American women. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 144-46 (1994) (extending Batson principles to gender discrimination). However, Lightfoot did not raise an issue of gender discrimination in the trial court. "Pursuant to Rule 5A:18, we 'will not consider an argument on appeal which was not presented to the trial court.'" Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)), aff'd, 269 Va. 3, 607 S.E.2d 119 (2005). Rule 5A:18 thus bars our consideration of the gender issue.

- 4 -

standard of review to <u>Batson</u>'s step one determination (citing <u>Batson</u>, 476 U.S. at 98 n.21)).[4] Therefore, this finding will not be reversed unless we determine it is "clearly erroneous."  <u>James v. Commonwealth</u>, 247 Va. 459, 462, 442 S.E.2d 396, 398 (1994) (citing <u>Hernandez v. New York</u>, 500 U.S. 352 (1991)); <u>see</u> <u>United States v. Escobar-de Jesus</u>, 187 F.3d 148, 164 (1st Cir. 1999) ("[T]he district court's ruling [under step one of <u>Batson</u>] on this fact-sensitive question must be upheld unless it is clearly erroneous."), <u>cited with approval in</u> <u>Johnson</u>, 259 Va. at 674, 529 S.E.2d at 781; <u>United States v. Lane</u>, 866 F.2d 103, 105 (4th Cir. 1989) (applying clearly erroneous standard to step one determination).

"To establish a *prima facie* case, the defendant must . . . 'identify facts and circumstances that raise an inference that potential jurors were excluded based on their race.'"  <u>Juniper</u>, 271 Va. at 407, 626 S.E.2d at 412 (quoting <u>Yarbrough</u>, 262 Va. at 394, 551 S.E.2d at 309); <u>see</u> <u>Johnson</u>, 545 U.S. at 168 ("First, the defendant must make out a *prima facie* case 'by showing that the *totality of the relevant facts* gives rise to an inference of discriminatory purpose.'" (quoting <u>Batson</u>, 476 U.S. at 93-94) (emphasis added)).  This means the defendant may not rely on "some magic number or percentage to trigger a <u>Batson</u> inquiry."  <u>Jackson v. Commonwealth</u>, 8 Va. App. 176, 182-84, 380 S.E.2d 1, 4-5 (1989); <u>see</u> <u>United States v. Sangineto-Miranda</u>, 859 F.2d 1501, 1521 (6th Cir. 1988) ("The Supreme Court's mandate in <u>Batson</u> to consider all the facts and circumstances means that we cannot lay down clear rules as to the specific numbers or percentages that will constitute or refute a *prima facie* case."), <u>cited with approval in</u> <u>Johnson</u>, 259 Va. at 674, 529 S.E.2d at 781.  Consequently, the "[m]ere exclusion of members of a particular race by using peremptory strikes 'does not itself establish . . . a *prima facie* case under

---

[4] <u>See</u> <u>Batson</u>, 476 U.S. at 97 ("We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination against black jurors.").

Batson.'" Juniper, 271 Va. at 407, 626 S.E.2d at 412 (quoting Yarbrough, 262 Va. at 394, 551 S.E.2d at 309). "[S]o too, the mere inclusion of [a particular race] on a jury does not automatically preclude a finding of a *prima facie* case . . . ." Jackson, 8 Va. App. at 183, 380 S.E.2d at 5. In other words, the trial court must make a "case-by-case determination whether the facts and any other relevant circumstances raise an inference of discrimination." Id. at 183, 380 S.E.2d at 5.

B.

In this case, we cannot say the trial court was clearly erroneous in its determination that Lightfoot failed to establish a *prima facie* case under Batson—i.e., finding that the relevant facts and circumstances did not give rise to an inference the Commonwealth was engaged in purposeful racial discrimination when it struck the two African-American women.

(i) Mead

As to Mead, the record amply supports the trial court's ruling. Lightfoot identified no facts or circumstances for the strike from which a discriminatory motive could be inferred. Indeed, the only reason apparent from the record for striking Mead is the same race-neutral reason that would explain the strike of Ewing, a Caucasian. They were the only two potential jurors who responded affirmatively when the Commonwealth asked if anyone on the venire had friends or relatives who had been charged with crimes in the past. In addition, Mead stated during defense counsel's *voir dire* that she had visited someone in jail or prison. It is well established that a court considering a Batson motion at step one "may consider apparent reasons for the challenges discernible on the record, regardless of whether those reasons were the actual reasons for the challenge." United States v. Stephens, 421 F.3d 503, 515 (7th Cir. 2005) (citation omitted). "This consideration of 'apparent reasons' is in fact nothing more than a consideration of 'all relevant circumstances' when determining whether an inference of discrimination is

established." Id. at 516; see Gray v. Commonwealth, 233 Va. 313, 336-38, 356 S.E.2d 157,

170-71 (1987) (finding no *prima facie* case where it was "apparent" from record that

Commonwealth's subject strike was based on race-neutral information revealed during *voir*

*dire*); see also Wade v. Terhune, 202 F.3d 1190, 1198 (9th Cir. 2000) (finding no *prima facie*

case where "record contain[ed] entirely plausible reasons, independent of race," for peremptory

strike); Johnson v. Campbell, 92 F.3d 951, 953 (9th Cir. 1996) (relying on "obvious neutral

reason for the challenge" in finding no *prima facie* case); Capers v. Singletary, 989 F.2d 442,

446 (11th Cir. 1993) ("When combined with the number of black jurors not challenged by the

state, the existence of plausible, racially neutral bases for the state's exercise of peremptory

challenges, apparent on the record, is sufficient to nullify any inference of discrimination that

otherwise might be drawn from the number of strikes used to remove black potential jurors.");

Washington v. Wright, 896 P.2d 713, 720 (Wash. App. 1995) (explaining that "apparent

nondiscriminatory reasons [for state's peremptory strikes] are important because they mitigate

against finding a pattern of strikes").

Furthermore, none of the prosecutor's questions or statements during *voir dire* "indicated

[he] was of a mind to discriminate in [his] exercise of peremptory strikes," Johnson, 259 Va. at

674-75, 529 S.E.2d at 781, which tends to "refut[e] an inference of discriminatory purpose,"

Batson, 476 U.S. at 96-97 (explaining that "the prosecutor's questions and statements during *voir*

*dire* examination and in exercising his challenges may support or refute an inference of

discriminatory purpose").

### (ii) Unidentified African-American Woman

As to the other African-American woman struck by the Commonwealth, Lightfoot does

not present a sufficient record upon which we can determine whether the trial court committed

the alleged error. The record does not reveal her identity, nor does it reveal her responses, if any,

during *voir dire*. We can discern from the record, however, that during *voir dire* a number of unidentified potential jurors responded affirmatively to questioning, providing race-neutral reasons for striking those respondents.[5] Any one of those respondents may have been the unidentified African-American woman. Once again, evidence in the record of "entirely plausible reasons, independent of race," for exercising a peremptory strike implies that racial bias did not motivate the prosecutor, thus negating a claim of purposeful racial discrimination under step one of a Batson challenge. Wade, 202 F.3d at 1198.

Lightfoot has thus failed in his "burden of producing a record that supports a *prima facie* case of purposeful discrimination" in the Commonwealth's peremptory strike of the unidentified African-American woman. Johnson, 259 Va. at 674, 529 S.E.2d at 780; see also Commonwealth v. Williams, 262 Va. 661, 669, 553 S.E.2d 760, 764 (2001) ("[On appeal], the circuit court's judgment is presumptively correct and the burden is on the appellant to present a sufficient record to permit a determination whether the circuit court committed an alleged error." (citing Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961)); Bullock v. Commonwealth, 48 Va. App. 359, 366, 631 S.E.2d 334, 337 (2006) ("The party alleging reversible error has the burden 'to show by the record' that the alleged error occurred." (quoting Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991))); Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) ("An appellate court must dispose of the case upon

---

[5] As noted above, one unidentified potential juror, for example, revealed that he or she went to high school with Lightfoot.

- 8 -

the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court.").

For these reasons, we affirm Lightfoot's convictions.

<u>Affirmed.</u>