COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Lorish and Frucci
Argued at Norfolk, Virginia


ALEXIUS JARITA WILSON

MEMORANDUM OPINION* BY
v.      Record No. 0677-24-1            JUDGE LISA M. LORISH
                                        SEPTEMBER 23, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General; Rebecca Johnson Hickey, Assistant Attorney
General, on brief), for appellee.


Alexius Jarita Wilson challenges her conviction for assault and battery of a police officer by

arguing that (1) the court erred in overruling her *Batson v. Kentucky*, 476 U.S. 79 (1986), challenge

of two prospective jurors, (2) the court erred by failing to strike another juror for cause, and (3) the

evidence was insufficient for the jury to convict her. Finding no error, we affirm the trial court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

Officers Cody Smith and Stephanie Peloso arrived at a home in Chesapeake, responding to a domestic disturbance. They determined that Wilson was the primary aggressor, detained her, and began to remove her from the home. As they did so, Wilson kicked Officer Peloso, striking her in the chest. Wilson was intoxicated at the time of her arrest. The officers took Wilson to the ground, and from that position Wilson told Officer Smith, "You were touching me aggressively. That's why [Officer Peloso] got what she got."

Wilson proceeded to trial by jury. During voir dire, prospective Juror 26, M.C.,[2] professed that she might harbor bias in favor of law enforcement officers. She said,

> You have to be respectful of police officers, not argue with them and not dispute what they're saying. That being said, I also think a person has a right to self-defense if that is the case, but yeah, you do what they say, and you're not going to get in a squabble with them.

She also stated that her brother was a retired police officer and that she had gone on a "ride-along" with him that allowed her to "[get] a view of what it's like from a police officer's view, and you know the fear that you have sometimes that you're going to be assaulted by somebody dangerously, you know, with weapons, and so it just gave me a new outlook and respect on what they go through mentally."

After these comments, the Commonwealth sought to rehabilitate her, leading to the following exchange:

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[2] We use initials to protect the privacy of the juror.

[Commonwealth]: And because you had that experience, you still understand that the Commonwealth has to prove its case, correct?

[M.C.]: Yes.

[Commonwealth]: So if there is no assault and battery in this case, would you find her guilty because she's disrespectful?

[M.C.]: No.

Commonwealth: If the Commonwealth doesn't prove those elements, you're not going to find her guilty?

[M.C.]: No.

Wilson moved to strike M.C. for cause, arguing that M.C. would be unfairly biased against her. The trial court ruled that it had

> considered the voir dire of [M.C.] and weighed her tone, tenor, and demeanor. She first indicated that she believes that people should be respectful to the police. They should not argue with police, and then on the flip side, she said that she believes that a person has a right to self-defense, and she might hold a bias of a person that is disrespectful to the police. Then she distinguished between what is required of her to discharge her duty as a result of this particular case in terms of whether the defendant committed an assault and battery versus being disrespectful to the police, and she indicated that she would hold the Commonwealth to the burden of proving that the defendant was guilty of assault and battery regardless as to whether or not she felt the defendant was disrespectful and would make the Commonwealth prove the elements. She did indicate that her brother was a retired police officer, and he gave her a new outlook on what police officers go through in terms of perhaps some apprehension that someone might assault them with some force or deadly weapons, but the final analysis she did indicate that she would hold the Commonwealth to its burden of proof as a result of the assault and battery charge and that the defendant is not charged with being disrespectful. The motion to strike Number 26 is denied.

As voir dire continued, Wilson alleged that the Commonwealth had used its peremptory strikes to strike two of four possible Black jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).. The Commonwealth explained that its background checks of the two prospective jurors revealed criminal histories and noted that the two stricken jurors lived in the same neighborhood as

Wilson. The trial court ruled that the Commonwealth had provided sufficient, race-neutral reasons for the strikes and denied the *Batson* challenge.

Wilson moved to strike after the Commonwealth rested, arguing that the Commonwealth had failed to prove that she intended to assault Officer Peloso. She also argued that her arrest was unlawful because the Commonwealth had not presented sufficient evidence that she was the primary aggressor in the domestic dispute. In response, the Commonwealth argued that it had met each element of the offense of assault and battery of a law enforcement officer. The Commonwealth also noted that when domestic violence is suspected, officers are required to arrest the primary aggressor, and regardless, Wilson never challenged the validity of the arrest until her motion to strike. The trial court denied the motion to strike.

Wilson testified that she was intoxicated the night of the incident and that the officers had not allowed her to put on shoes. She claimed that she had only been trying to brace her foot against the door when the officers were removing her from the home.

Wilson renewed her motion to strike, reiterating the same arguments. The trial court denied the motion to strike, and the jury convicted Wilson of assault and battery of a law enforcement officer. The court sentenced Wilson to six months of incarceration. Wilson now appeals.

ANALYSIS

I. The trial court did not err in denying Wilson's *Batson* challenge.

Wilson argues that the trial court erred in denying her *Batson* challenge of two of the Commonwealth's strikes. While the Commonwealth offered race-neutral reasons for the strikes, Wilson argues the trial court failed to sufficiently analyze those reasons and that they were mere pretext.

"In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the United States Supreme Court held that excluding a potential juror solely on the basis of the juror's race is purposeful discrimination

and a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." *Jackson v. Commonwealth*, 266 Va. 423, 435 (2003). "*Batson* stands as a watchtower over voir dire in criminal cases to guard juries from being poisoned by racial bias whether injected by prosecutors or by criminal defense attorneys. *Batson* does so by targeting '*purposeful* discrimination in selection of the petit jury.'" *Bethea v. Commonwealth*, 297 Va. 730, 748 (2019) (quoting *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019)).

"A *Batson* challenge involves three sequential steps." *Id.* First, "the opponent of the strike 'must make out a *prima facie* case' of purposeful discrimination." *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). The burden then shifts to the Commonwealth to "'explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Johnson*, 545 U.S. at 168). If the Commonwealth tenders a race-neutral explanation, "the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination." *Id.* (quoting *Johnson*, 545 U.S. at 168). The *Batson* framework "presumes the good faith of prosecutors" and the opponent of the strike "ultimately carries the 'burden of persuasion' to 'prove the existence of purposeful discrimination.'" *Id.* (quoting *Johnson*, 545 U.S. at 170-71). "*Batson*'s treatment of intent to discriminate [i]s a pure issue of fact," and "a trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is 'entitled to "great deference."'" *Id.* at 756 (alteration in original) (first quoting *Hernandez v. New York*, 500 U.S. 352, 364 (1991); and then quoting *Davis v. Ayala*, 576 U.S. 267, 271 (2015)).

Here, Wilson, the "opponent of the strike," has failed to prove purposeful racial discrimination. After Wilson's *Batson* challenge, at stage two of the process, the Commonwealth proffered two race-neutral reasons for the challenged strikes: that the jurors lived in the same area as Wilson and that they each had a criminal history. The court was then

required to consider those proffered reasons and determine whether Wilson had carried her burden of persuasion to prove the existence of purposeful discrimination. Wilson, for her part, did not refute those explanations by arguing that the Commonwealth failed to strike similarly situated white jurors, or in any way other than arguing that the Commonwealth's reasons were "a little sketchy." And we have affirmed a trial court's determination that a juror strike based on having a criminal record is race neutral. *See, e.g.*, *Langhorne v. Commonwealth*, 13 Va. App. 97, 107-08 (1991) (describing as "race-neutral" the use of a peremptory strike on a Black juror who had a criminal record). We have also affirmed a trial court's conclusion that striking a juror for living in the same neighborhood where the crime occurred is race neutral. *Taitano v. Commonwealth*, 4 Va. App. 342, 347 (1987) (finding that a "clear and specific non-racial reason[] for striking" a juror was that "they lived near the defendant or near the scene of the crime").

Even so, Wilson argues that the trial court was required to "independently evaluate" these reasons and conclude they were insufficient under *Jackson v. Commonwealth*, 8 Va. App. 176, 185 (1989). But *Jackson* presents a different set of circumstances. There, the Commonwealth's purported reasons for the strikes were that one of the jurors looked to be about the same age as the defendant and that their "addresses" were "considerations." *Id.* at 186. Because there was no evidence in the record about where the defendant lived, or any evidence that the addresses were near the scene of the robbery, we found the mere mention of "addresses" insufficient. *Id.* Additionally, defense counsel there disputed the age comparison, and we noted that the trial court failed to follow up by determining whether they were the same age, or the ages of those persons not struck from the jury. *Id.*

On these facts, we affirm the trial court's determination that having a criminal record and living in the same neighborhood as the defendant (which is where the crime occurred) were

race-neutral reasons for the juror strikes. Thus, the trial court did not err in denying the *Batson* challenge.

II. The trial court did not err by not striking M.C. for cause.

Wilson also contends that the trial court erred in not striking M.C. for cause after she expressed potential bias in favor of police, arguing that the Commonwealth failed to rehabilitate her.

"The striking of any individual potential juror for cause . . . is committed to the sound discretion of the trial court." *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005). "It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case." *Salina v. Commonwealth*, 217 Va. 92, 93 (1976). Therefore, "[t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein." Code § 8.01-358; *see* Rule 3A:14. If after questioning it appears to the circuit court "that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case." Code § 8.01-358. A juror who "does not stand indifferent to the cause . . . is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law.'" *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60-61 (2011) (quoting *Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)).

"It is not uncommon to discover during voir dire that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000) (emphasis omitted). "The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va.

971, 976 (1980) (emphasis added) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)).  Thus, "the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Cressell*, 32 Va. App. at 761.

Given that the trial court is "able to see and hear each member of the venire respond to questions posed" during voir dire, it "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Townsend*, 270 Va. at 329 (quoting *Green v. Commonwealth*, 262 Va. 105, 115-16 (2001)). Juror impartiality is a question of fact, *Wainwright v. Witt*, 469 U.S. 412, 428 (1985), and a trial court's decision to seat a juror is entitled to great deference on appeal, *McGill v. Commonwealth*, 10 Va. App. 237, 241 (1990).  Accordingly, the decision to retain or exclude a prospective juror "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion."  *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001).  In determining whether the trial court should have excluded M.C., this Court must consider the "entire voir dire, not just isolated portions."  *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)).

Taken as a whole, we cannot say the trial court's conclusion that M.C. was unbiased was an abuse of discretion.  Though she expressed potential bias against those who are disrespectful toward law enforcement, she also said that she "think[s] a person has a right to self-defense" when treated unfairly by police.  Further, she said that she understood there was a difference between disrespect and assault and that she would not find Wilson guilty if she had merely been disrespectful to the officers.  She also affirmed that if the Commonwealth failed to meet its burden, she would not vote to convict Wilson.  Her responses demonstrated that she did not possess an opinion of "fixed

- 8 -

character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus*, 220 Va. at 976. Bearing in mind that the trial court is in a superior position to evaluate the tone and comportment of a potential juror, we find that the court did not abuse its discretion in refusing to strike M.C. for cause.

III. The trial court did not err in denying Wilson's motion to strike.

Finally, Wilson argues that the trial court erred in denying her motion to strike because the evidence was insufficient to show that she intended to kick Officer Peloso.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57. To sustain a conviction for assault, the Commonwealth must

prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "At common law, any touching 'in anger, without lawful provocation,' however slight, including 'spitting in a man's face,' was sufficient to support a battery conviction." *Gilbert v. Commonwealth*, 45 Va. App. 67, 70 (2005) (quoting *Hardy v. Commonwealth*, 58 Va. (17 Gratt.) 592, 601 (1867)).

The evidence showed that Wilson, while being taken into custody, kicked and struck Officer Peloso. The evidence also showed that Wilson said, "You were touching me aggressively. That's why [Officer Peloso] got what she got." Wilson was, by her own admission, upset and intoxicated at the time of her arrest. A factfinder could easily determine from these facts that Wilson kicked Officer Peloso in anger, intending to cause her bodily harm. Accordingly, the trial court did not err in denying her motion to strike.

CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed.*