COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Haley and Petty
Argued at Salem, Virginia


LIVINGSTON PRITCHETT, III

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 3132-06-3                    JUDGE JAMES W. HALEY, JR.
                                                        OCTOBER 14, 2008
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                            Ray W. Grubbs, Judge

          Brian T. Scheid (Warren & Scheid, P.C., on brief), for appellant.

          Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General; Craig W. Stallard, Assistant Attorney
          General, on brief), for appellee.


        Livingston Pritchett, III ("Pritchett") appeals his convictions for first-degree murder in

violation of Code § 18.2-32, robbery in violation of Code § 18.2-58, and two additional

convictions for the use of a firearm in the commission of a felony in violation of Code

§ 18.2-53.1.  This case presents two questions for resolution:  1) whether the circuit court erred

in denying Pritchett's motion for a change of venue because of prejudicial pretrial publicity and

2) whether the circuit court erred in rejecting Pritchett's challenge, pursuant to Batson v.

Kentucky, 476 U.S. 79 (1986), to the Commonwealth's peremptory strike of potential

African-American juror Dionne Harrison during the selection of the jury.  Finding that the trial

court did not err in deciding either of these questions, we affirm Pritchett's convictions.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

FACTS

Pritchett was originally charged in an indictment for capital murder on October 14, 1997. This indictment alleged that he killed Estel Singleton in the course of a robbery on April 30, 1997. A jury convicted him of murder in the first degree, but our Supreme Court remanded his case for a new trial for reasons unrelated to the issues in this case. Pritchett v. Commonwealth, 263 Va. 182, 557 S.E.2d 205 (2002). During Pritchett's second trial, which ended in a hung jury, Josiah Showalter represented the Commonwealth. During the interval between Pritchett's second and third trials, Mr. Showalter was appointed a circuit court judge for the 27th Judicial Circuit. On April 1, 2006, an article appeared in the Current Section of the Roanoke Times newspaper that included an interview with the newly appointed Judge Showalter. The article is composed of thirty-nine paragraphs, and only one of them mentions Pritchett. The thirty-first paragraph reads: "As prosecutor, Showalter said one of his few regrets is not winning the case of Livingston "Bud" Pritchett III, who is charged with killing a man at an Ironto rest stop in 1997. The September trial ended in a mistrial."

Pritchett filed a pretrial motion for a change of venue, arguing that Judge Showalter's comment while Pritchett's case was still pending prevented him from receiving a fair trial in Montgomery County. The Roanoke Times article on Judge Showalter was the only piece of pretrial publicity Pritchett mentioned in support of his motion for a change of venue. Judge Grubbs stated that Pritchett's motion would remain under advisement as the parties attempted to seat a jury.

On June 2, 2006, Pritchett appeared in Montgomery County Circuit Court for trial. Seating a jury took five hours and twenty-five minutes. The trial court examined thirty-six potential jurors to determine their qualifications. The jurors also answered the questions of

counsel.  Thirteen were excused for cause.  Defense counsel asked each of the potential jurors about the Roanoke Times article.  Four potential jurors remembered reading the article or hearing about the article from someone else.  Of these, only one remembered the paragraph mentioning Pritchett's earlier mistrial.  All of the others told defense counsel that they were unaware of the article.  Of the twenty-three jurors who survived the challenges for cause, each of the parties removed six using peremptory challenges, leaving twelve jurors to decide the case and one alternate.  None of the jurors who had read or were aware of the article remained on the jury panel that decided Pritchett's case.

Pritchett, an African-American, made a Batson challenge to the Commonwealth's peremptory strike of Dionne Harrison, an African-American juror.  In support of his Batson challenge, Pritchett argued that the Commonwealth's decision to use a peremptory challenge on the only African-American on the panel raised an inference of racial discrimination.  The attorney for the Commonwealth contended that Pritchett was mistaken about the number of African-Americans on the venire, noting that one African-American remained on the jury even after Ms. Harrison was excused.  He also suggested two race-neutral reasons for striking Ms. Harrison.  First, Ms. Harrison had testified that her cousin had been murdered and that the murder involved a handgun, like the murder of the alleged victim in Pritchett's trial.  He mentioned that he suspected that this might affect her impartiality.  Second, Ms. Harrison was an employee of a program called Head Start, which has among its goals assisting mentally-challenged children.  The Commonwealth suspected Ms. Harrison's work with Head Start might make her more sympathetic to the defendant, who was described in voir dire as mildly mentally retarded.  The trial court ruled as follows:

> All right.  Gentlemen, in response to your motion, Mr. Scheid, I'm
> not convinced that a prima facie case of purposeful discrimination

has been put forward.  However, I have considered the reasons put forward by the Commonwealth as to why Ms. Harrison was struck. As I understand those reasons, number, one, the Commonwealth is of the belief that another member of this jury, based upon physical appearance, is African-American; number two, Ms. Harrison's personal experience in dealing with the death of her cousin, who was a murder victim, the instrument being a handgun as will be alleged in this case, and the impact of that experience upon her suitability to serve on this jury; and number three, Ms. Harrison's experience as an employee of Head Start which deals with challenged children, and it has been eluded [sic] to in voir dire that Ms. [sic] Pritchett is mildly retarded, and the impact that her employment may have on her suitability to sit on this jury.  In conclusion, I find that the Commonwealth's strikes are race neutral and I find no purposeful discrimination.

To complete the record, the court examined the juror whose race was disputed by the lawyers after the jury was sworn and the trial began.

(The following discussion between Judge Grubbs and Juror, Karisa Moore, took place in Chambers, with the Defendant, Livingston Pritchett, III, defense counsel, Mr. Scheid, and Commonwealth Attorney, Mr. Finch present:)

JUDGE GRUBBS:  There has been an issue raised in this case about race and because of that, we need to know your race, if you would be kind enough to tell us.

JUROR:  I am biracial.  Uh –

JUDGE GRUBBS:  Could you tell us?

JUROR:  Black.  I mean, I know that the government doesn't allow me to choose.  I just call myself biracial but if I have to choose, then in choosing, I choose black.

JUDGE GRUBBS:  All right.  I appreciate your telling us that. There are some issues involved that it was absolutely necessary to ask and I appreciate that.  Thank you very much.

JUROR:  You're welcome.

CHANGE OF VENUE

There is a presumption that a criminal defendant will receive a fair trial in the jurisdiction where the offense occurred. Thomas v. Commonwealth, 263 Va. 216, 230, 559 S.E.2d 652, 659-60 (2002). "It is the burden of the defendant to overcome this presumption by demonstrating that the feeling of prejudice on the part of the citizenry is widespread and is such that would 'be reasonably certain to prevent a fair trial.'" Mueller v. Commonwealth, 224 Va. 386, 398, 422 S.E.2d 380, 388 (1992) (quoting Stockton v. Commonwealth, 227 Va. 124, 137, 314 S.E.2d 371, 380 (1984)). Pritchett quotes from Thomas that "[n]ever has this Court held the impartiality of the seated jury to be a factor in considering whether a motion for change of venue should be granted, much less found it dispositive." Thomas, 263 Va. at 232, 559 S.E.2d at 661. Citing Wansley v. Commonwealth, 210 Va. 462, 468-69, 171 S.E.2d 678, 683 (1970), Pritchett further argues that his is a case in which pretrial publicity "involves such a probability that prejudice will result that it is deemed inherently lacking in due process."

However, "the mere showing of extensive publicity or general knowledge of a crime or of the accused, including his criminal record, is not enough to justify a change of venue." Buchanan v. Commonwealth, 238 Va. 389, 407, 384 S.E.2d 757, 769 (1989). Factors to consider include the volume, accuracy, and timing of the publicity, and also whether the publicity is temperate or inflammatory. See Thomas, 263 Va. at 233, 559 S.E.2d at 660. The ease of impaneling a jury is another important consideration. Id.

In this case, Pritchett complains of pretrial publicity that was not extensive. The single Roanoke Times article is the only piece of pretrial publicity in the record. Pritchett was mentioned in only a single paragraph of the thirty-nine paragraphs in the article. The main body of the article is chiefly a biographical sketch of Judge Showalter. While Judge Showalter did

express regret at the outcome of Pritchett's second trial, the article contains no apparent inaccuracies – Pritchett *was* put on trial for murder and the trial *did* end in a mistrial.  The article does not express an opinion on whether Pritchett was guilty of the killing, nor did it call for him to be punished.  Moreover, no one who served on Pritchett's jury read, or had heard of, the article.  It is, therefore, difficult to understand how this article could have prevented Pritchett from receiving a fair trial in Montgomery County.

Pritchett's reliance on <u>Thomas</u> and <u>Wansley</u> is misplaced.  It is true that our Supreme Court stated, in <u>Thomas</u>, that the impartiality of the seated jury was not dispositive in resolving a defendant's motion for a change of venue.  <u>Id.</u> at 232, 559 S.E.2d at 661.  In <u>Thomas</u>, voir dire took five days.  Moreover, "all of the jurors ultimately seated were aware of the pretrial publicity and knew about the case."  <u>Id.</u> at 229, 559 S.E.2d at 659.  When the defense moved for a change of venue after voir dire, "[t]he trial court denied the motion, stating that 'the law seems to indicate that what the court should do in situations like this is attempt to seat a jury, and if a jury can be seated or chosen, then that answers the question.'"  <u>Id.</u> at 230, 559 S.E.2d at 659.  "While this Court has included statements regarding the impartiality of the jury actually seated when discussing the relative ease of seating a jury, it is the ease of seating the jury that is the relevant factor, not the ultimate result of that process."  <u>Id.</u> at 232, 559 S.E.2d at 661.

> Accordingly, we conclude that the trial court erred, as a matter of law, by failing to apply the proper test and failing to consider the necessary factors when making its decision to deny Thomas' motion to change venue.  Consequently, because the trial court used an improper legal standard in exercising its discretionary function, we are unable to apply the appellate review standard of abuse of discretion.  In light of this holding, the judgment of conviction must be vacated.

<u>Id.</u> at 233, 559 S.E.2d at 661.  <u>Thomas</u> is distinguishable from this case because, unlike the record in <u>Thomas</u>, the record here does not suggest that the trial judge applied an improper legal

standard in his ruling on Pritchett's motion for a change of venue. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). The trial judge's statement in Thomas was "clear evidence to the contrary" that made deference to this presumption inappropriate in that case. But nothing like that statement appears in the record before us.

Wansley, 210 Va. 462, 171 S.E.2d 678, involved extensive and sometimes intemperate pretrial publicity. As in this case, the defendant was tried and convicted; his conviction was reversed on appeal; and his second trial ended in a hung jury. Id. at 463 n.1, 171 S.E.2d at 679 n.1. "[U]p to and including March 1967, the month of Wansley's third trial, the Lynchburg News and Daily Advance made continual references to [defense counsel]. And they seldom, if ever, mentioned [defense counsel] without adding substantially these words: 'who has been linked on numerous occasions with Communist-front organizations and efforts.'" Id. at 464-65, 171 S.E.2d at 680. Newspaper accounts also mentioned the defendant's confession and repeatedly referred to the defendant's race and to the race of his alleged victim. Id. After extensive voir dire, eleven perspective jurors were struck for cause because they believed the defendant was guilty based on what they had read in the newspaper articles and one was excused because he respected the Commonwealth's attorney more than the defense attorney because of the newspaper's suggestions that defense counsel was a communist. Id. at 465, 171 S.E.2d at 681. Neverthelesss, our Supreme Court refused to reverse the trial judge's denial of the defendant's pretrial motion for a change of venue.

> Every juror challenged for cause by Wansley's counsel on a
> ground related to pretrial publicity was excused (see n. 8, *supra*);
> in addition petitioner was given four peremptory challenges, all of
> which were exercised. Although the persons thus selected for the

> trial jury had been exposed to some of the pretrial publicity related in this opinion, each indicated that he was not biased, that he had formed no opinion as to Wansley's guilt which would require evidence to remove, and that he would enter the trial with an open mind disregarding anything he had read on the case.

Id. at 468, 171 S.E.2d at 683. Pritchett cites Wansley briefly, and only for our Supreme Court's recognition that there may be circumstances in which pretrial publicity creates such a probability of prejudice that "the defendant is not required to establish identifiable prejudice." Id. at 469, 171 S.E.2d at 683. What Pritchett fails to do is to explain how the Roanoke Times article in his case could pose such a probability of prejudice when the more extensive and intemperate pretrial publicity in Wansley did not.

In Wansley, eleven potential jurors were struck for cause because they thought the defendant was guilty because of pretrial newspaper coverage. In this case, only one of the thirty-six potential jurors, Patricia Smith, was even aware that the article mentioned Pritchett; and she was excused for cause. Despite diligent voir dire by defense counsel, nothing in the record suggests that the article created a probability that Pritchett could not receive a fair trial in Montgomery County. Everyone who served on Pritchett's jury told the court that they had no bias or prejudice against either of the parties. All of them indicated that they understood that Pritchett was presumed innocent and that the burden of proving his guilt was on the Commonwealth.

The governing cases hold that even extensive publicity or general knowledge of the crime is not always enough for a change of venue. Buchanan, 238 Va. at 407, 384 S.E.2d at 769. Because the pretrial publicity in this case was not extensive and did not create a general knowledge of the crime, we must conclude that Pritchett did not overcome the presumption that

he could receive a fair trial in the jurisdiction where the crime occurred. Accordingly, the trial court did not err in denying his request for a change of venue.

BATSON CHALLENGE

Exclusion of a potential juror by peremptory challenge solely because of the juror's race is a violation of the Equal Protection Clause of the Fourteenth Amendment. Jackson v. Commonwealth, 266 Va. 423, 435, 587 S.E.2d 532, 542 (2003). "When a defendant raises a challenge based on Batson, he must make a prima facie showing that the peremptory strike was made on racial grounds. At that point, the burden shifts to the prosecution to produce race-neutral explanations for striking the juror." Id. at 436, 587 S.E.2d at 542. The third and last step of the Batson inquiry is for the court to determine whether the defendant has carried his burden of purposeful discrimination. Rice v. Collins, 546 U.S. 333, 338 (2006) (citing Batson, 476 U.S. at 98).

A finding that the defendant failed to establish a prima facie case of racial discrimination will not be reversed unless it is clearly erroneous. Lightfoot v. Commonwealth, 50 Va. App. 723, 728, 653 S.E.2d 615, 618 (2007).

> The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge." In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these questions of credibility and demeanor lie "peculiarly within a trial judge's province," and we have stated that " in the absence of exceptional circumstances, we would defer to [the trial court].

Snyder v. Louisiana, 128 S. Ct. 1203, 1208 (2008). "The fact that the prosecution has excluded African Americans by using peremptory strikes does not itself establish such a prima facie case under Batson." Yarbrough v. Commonwealth, 262 Va. 388, 394, 551 S.E.2d 306, 310 (2001). However, the mere inclusion of a person of the defendant's race in the jury ultimately selected does not preclude a Batson challenge. See Jackson v. Commonwealth, 8 Va. App. 176, 183, 380 S.E.2d 1, 5 (1989).

The record establishes that Mr. Pritchett is a member of a cognizable racial group. The trial court's treatment of the second step of the Batson procedure is less clear. While the trial court expressed doubt as to whether Pritchett had made a prima facie showing of discrimination, he examined and ruled upon the ostensibly race-neutral reasons offered by the attorney for the Commonwealth. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. 352, 359 (1991); Barksdale v. Commonwealth, 17 Va. App. 456, 459, 438 S.E.2d 761, 763 (1993) (en banc). In this case, the trial court made no clear ruling on whether Pritchett had established a prima facie case of discrimination, and instead denied Pritchett's Batson challenge based on its ruling that the prosecutor's reasons for excusing Ms. Harrison were race-neutral. Thus, we assume, without deciding, that Pritchett established a prima facie case and proceed to review the trial court's ruling on the reasons offered by the prosecutor for using a peremptory challenge on Ms. Harrison. See Yarbrough, 262 Va. at 395, 551 S.E.2d at 310 (assuming without deciding that the defendant established a prima facie showing of discrimination in reviewing the trial court's ultimate Batson decision). Because we assume without deciding that Pritchett established a prima facie case for the purposes of this

decision, we do *not* decide whether the "biracial" juror examined by the court was an African-American for the purposes of the Batson inquiry.

One of the reasons mentioned by the prosecutor for striking Ms. Harrison was his concern that her work for Head Start might make her overly sympathetic to a defendant who was described by his lawyer in voir dire as having mild mental retardation. Our Supreme Court discussed a similar reason for using a peremptory challenge in Yarbrough:

> In response, the Commonwealth contends that the facts do not raise an inference that the prosecutor struck Woodson from the jury panel because of his race. The Commonwealth notes the prosecutor's explanation that Woodson exhibited an unusual interest in the defendant and that as a teacher, Woodson may have been sympathetic to a 19-year-old defendant. The Commonwealth contends that such concerns about a potential juror's demeanor and interest in a defendant provide a race neutral explanation for exercising a peremptory strike.

Id. at 393-94, 551 S.E.2d at 309. "Assuming, without deciding, that the defendant established a prima facie case of purposeful discrimination under Batson, we hold that the record supports the trial court's conclusion that Woodson was not struck from the jury panel because of his race." Id. at 395, 551 S.E.2d at 310. As in Yarbrough, the prosecutor in this case asserted that he exercised a peremptory strike because of his belief that Ms. Harrison's occupation made it more likely that she would be sympathetic to the defense.

Pritchett argues that the Commonwealth did not make a persuasive case that Ms. Harrison's work for Head Start was not a pretext because the prosecutor did not ask Ms. Harrison any questions about her employment to confirm or dispel his suspicions that she might be sympathetic to the defense. But we are reluctant to conclude that a lack of voir dire regarding Ms. Harrison's occupation necessarily means that the prosecutor's reason for his use of a peremptory strike was a pretext, especially given the fact that Yarbrough does not mention any

voir dire regarding the potential juror's occupation as a teacher.  Nor do we think the

prosecutor's lack of voir dire on the subject is enough to overcome the deference we owe to the

trial court's ruling on the prosecutor's credibility.  See Snyder, 128 S. Ct. at 1208.  We hold the

trial court did not err in its finding that the reason for the prosecutor's peremptory challenge was

race-neutral, and we affirm Pritchett's convictions.

Affirmed.